## UNITED STATES v. DENVER & R. G. W. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1926.)

No. 6986.

1. **Public lands** ⊂⇒88(1)—Government may sue to forfeit land grant for breach of condition subsequent.

United States may maintain a suit in equity for forfeiture of grant of public lands for breach of condition subsequent.

2. **Estoppel** ⊂⇒62(2)—United States may be estopped to assert claim under circumstances that would estop an individual.

The United States may waive a claim, and be estopped from its assertion under circumstances that would estop an individual from the assertion of a similar claim.

3. **Public lands** ⊂⇒92—United States held estopped to claim forfeiture of railroad right of way.

A railroad company made application under Act March 3, 1875 (Comp. St. §§ 4921-4926),

for right of way over public lands for a 20-mile section of road, which was granted and the road constructed, but shortly afterward largely destroyed by mountain storms and not repaired. More than 10 years later the successor of such company made application for right of way for an extension of 20 miles beyond said section, which was approved by the Secretary of the Interior with knowledge of the facts, and the company expended some $200,000 in reconstruction of the abandoned portion. *Held*, that the United States waived its right, and was estopped to claim forfeiture of the grant for the section under reconstruction, under section 4 of the Act (Comp. St. § 4924), but as to the extended section, on which no work had been done within the five years required by the act, nor within a reasonable time, there was no estoppel, and the grant was subject to forfeiture.

**4. Equity ⬉⟾24—Equity cannot relieve against forfeiture imposed by statute.**

Equity cannot relieve against forfeiture expressly imposed by statute.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Suit in equity by the United States against the Denver & Rio Grande Western Railroad Company and others. From a decree dismissing the bill, complainant appeals. Affirmed in part, reversed in part, and remanded.

For opinion below, see 2 F.(2d) 873.

Charles M. Morris, U. S. Atty., of Salt Lake City, Utah (S. W. Williams, Sp. Asst. Atty. Gen., on the brief), for appellant.

P. T. Farnsworth, Jr., of Salt Lake City, Utah (Waldemar Van Cott, of Salt Lake City, Utah, and Henry McAllister and Elroy N. Clark, both of Denver, Colo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

MUNGER, District Judge. The United States brought a suit in equity seeking a forfeiture because of nonuser of a right of way claimed by the Denver & Rio Grande Western Railroad Company over portions of the public lands. From a decree in favor of the defendants, the United States has appealed. By an Act of Congress approved March 3, 1875 (18 Stat. 482; Comp. Stats. 1918, §§ 4921–4926), a right of way was granted to railway companies over portions of the public lands of the United States. Some of the conditions of the grant are stated in section 4 of the Act (Comp. St. § 4924), which reads as follows:

"Any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

Under this act, the Castle Valley Railway Company on June 23, 1902, filed an application for a right of way in Utah 20 miles in length, crossing public lands, and the application was approved on July 31, 1902, by the Secretary of the Interior. In 1902 and 1903 the Castle Valley Railway Company constructed and completed a line of railroad over this right of way. It was constructed through a canyon in the mountains. Very soon afterwards severe storms occurred, which caused a large portion of the roadbed to be washed out and destroyed. No trains were operated upon this road for the purpose of carrying freight or passengers for hire. The Castle Valley Company was not financially able to restore the roadbed of the railway. The railway was built with a view of furnishing transportation for coal which was known to exist in that vicinity, but, after the destruction of the portions of the railway roadbed, other coal mines were developed and transportation facilities were provided, which supplied the market that the Castle Valley Company had sought to enter. In 1908, the Castle Valley Company conveyed its title to this railway and right of way to the Denver & Rio Grande Railroad Company, and this grantee began the work of restoring the line of railway in December, 1913, about 10 years after its destruction by the storms that have been mentioned. By November, 1914, the company had expended $34,681.31 in this work.

After the beginning of the World War in 1914, the company deemed it advisable to discontinue the work of restoration in December, 1914. On December 28, 1917, the United States took possession of the railroads and continued in possession of this railroad until March 1, 1920. In the meantime, on January 26, 1918, the United States District Court for the District of Colorado appointed a receiver for the Denver & Rio Grande Railroad Com-

pany, and this receivership continued until July 31, 1921. On the next day the property of the railroad company was conveyed to the Denver & Rio Grande Western Railroad Company. On July 22, 1922, a receiver was appointed for this railroad company by the United States District Court for the District of Colorado, and that receiver continued in possession until after this suit was begun. On March 1, 1921, the receiver began the work of restoring the roadbed, and this work was continued until September 1, 1923, when it was suspended because of adverse weather and because of financial difficulties. There was expended in this work the sum of $141,-725.55, of which $25,816.15 was expended by the receiver between March 1, 1921, and July 31, 1921, pursuant to an order of the court, $60,097.93 was expended by the Denver & Rio Grande Western Railroad Company, and $55,811.67 was expended by the receiver between August 1, 1922, and September 1, 1923, pursuant to an order of the court. The companies mentioned or the receivers paid the taxes levied against the railway and right of way by the state of Utah, and have retained the right of way with the intention of completing and operating a railway thereon.

The Denver & Rio Grande Railroad Company, on January 12, 1914, filed an application for a right of way over the public lands for an additional 20 miles of railway, beginning at the point where the first 20 miles heretofore mentioned terminated. This application was approved by the Secretary of the Interior on November 13, 1915. No line of railroad was constructed over this second section of right of way, but the right of way has been retained with the intention of the owners that a railway should be constructed over it. It is alleged in the answer and admitted by the government, that "it was and now is utterly impracticable and within any reasonable period of time impossible" to construct a railway over this second section until the railway is completed over the first section, because of the location of the second section in a mountainous region, far from means of transportation for rails, ties, and other materials. The answer further alleges that it is the purpose of the railway company to resume the work of restoration of the railway and also to construct a line of railway over the second section, and to operate trains "as and when feasible and desirable, and when justified in the public interest and necessity."

The nature of the grants made under the act of Congress were defined in Rio Grande Ry. v. Stringham, 239 U. S. 44, 47, 36 S. Ct. 5, 6 (60 L. Ed. 136), as follows: "The right of way granted by this and similar acts is neither a mere easement, nor a fee-simple absolute, but a limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purposes for which it is granted."

[1] The right of the United States to proceed in equity for a forfeiture of a grant for the breach of a condition subsequent is established. Kern River Co. v. United States, 257 U. S. 147, 154, 42 S. Ct. 60, 66 L. Ed. 175; Union Land & Stock Co. v. United States (C. C. A.) 257 F. 635, 638. The appellees contend that, as to the first section of 20 miles, there was no breach of the condition stated in the latter part of section 4 of the act of Congress, providing that if any section of the railway is not completed within five years after the location of the section, the rights granted shall be forfeited as to such uncompleted section, because the railway company did construct and complete a line of railroad over this section within five years from the date of the grant, and that, if there was any implied condition of reverter as to this section, because it was not used for the operation of trains, and was not fully reconstructed, the United States has waived the right to enforce a forfeiture, and is estopped from claiming a forfeiture.

[2] The equitable claims of the state or of the United States are no stronger than those of an individual under like circumstances, and a state or the United States may waive a claim and be estopped from the assertion of a claim under circumstances that would estop an individual from the assertion of a similar claim. State of Iowa v. Carr (C. C. A.) 191 F. 257, 266; United States v. Chandler-Dunbar Water Power Co. (C. C. A.) 152 F. 25, 41; United States v. Debell (C. C. A.) 227 F. 775, 779; Rannels v. Rowe (C. C. A.) 145 F. 296, 301; 1 Pom. Eq. Jur. sec. 451.

[3] It is admitted by the pleadings or established by the evidence in this case that the approval by the Secretary of the Interior of the application for the second section of the right of way was made in November, 1915, when the United States and the Secretary of the Interior were fully advised that the railway which had been constructed over the first section had been partially destroyed and had not been restored, and that no train had been operated over that section after 1903; that the United States, with knowledge of the intention of the railway company to reconstruct its line of railway, and knowing that, if a forfeiture of the right of way was enforced, expenditures made by the railway company in reconstruction would be lost to it, and knowing that the railway company was doing this

work and incurring this expense in the belief that the United States would not claim any forfeiture, was silent while the reconstruction was in progress, and acquiesced therein, and permitted the expenditure by the railway company in this work of $34,681.31 in 1913 and 1914, and of $141,725.75 between March 1, 1921, and September 1, 1923.

Under these circumstances, the United States waived and was estopped from claiming the right to insist upon a forfeiture, by this suit which was begun some time before June 14, 1924, of the right of way along the first 20 miles of the railway. This conclusion makes it unnecessary to determine whether a forfeiture could be awarded to the United States under the provisions of section 4 of the act of Congress cited, if a line of railroad was completed within five years upon the land granted, but was thereafter destroyed and not replaced.

[4] As to the right of way claimed for the second section of railway, it is undisputed that, not only was no railway ever completed over it, but none was ever begun. The express condition of the grant, fixed by the act of Congress as completion of the railway within five years, has been broken. The defendants contend that the railway companies which have owned this grant have been financially unable to construct a railway upon it, and have doubted the profitable development of a coal-carrying trade, if the railway were constructed. They claim that it is still retained for railway purposes; but this is much qualified by the admission that it is the intention to construct a railway over the grant and to operate trains only when feasible and desirable, and justified by the public interest and necessity. It is also urged that it is impracticable and impossible to build a railway there in any reasonable time, until the first section of railway is restored and completed, because of inability to transport the rails, ties and other material that would be needed. It is not shown that the roadbed could not be substantially prepared in advance of the need of rails and ties. It is further urged that the value of the right of way granted is trivial, and is not worth over $1 per acre, and that no public interest requires the construction of the railway. These and other excuses presented for the failure of any attempt to comply with the condition of the grant are not convincing. The public is concerned in the construction of the railway projected, in the development of the region affected, and the extension of the transportation system. It is admitted that there are extensive deposits of coal on and near the public lands, which

need the aid of the proposed railway. As was said in Farnsworth et al. v. Minn. & Pac. R. R. Co., 92 U. S. 49, 68, 23 L. Ed. 530.

"But it is said that provisions for forfeiture are regarded with disfavor and construed with strictness, and that courts of equity will lean against their enforcement. This, as a general rule, is true when applied to cases of contract, and the forfeiture relates to a matter admitting of compensation or restoration; but there can be no leaning of the court against a forfeiture which is intended to secure the construction of a work, in which the public is interested, where compensation cannot be made for the default of the party, nor where the forfeiture is imposed by positive law. 'Where any penalty or forfeiture,' says Mr. Justice Story, 'is imposed by statute upon the doing or omission of a certain act, there courts of equity will not interfere to mitigate the penalty or forfeiture, if incurred; for it would be in contravention of the direct expression of the legislative will.' Story's Eq. Jur. § 1326. The same doctrine is asserted in the case of Peachy v. Duke of Somerset, reported in 1st Strange, and in that of Keating v. Sparrow, reported in 1st Ball & Beatty. In the first case, Lord Macclesfield said that 'cases of agreement and conditions of the party and of the laws are certainly to be distinguished. You can never say that the law has determined hardly; but you may that the party has made a hard bargain.' In the second case, Lord Manners, referring to this language and taking the principle from it, said that 'it is manifest that, in cases of mere contract between parties, this court will relieve when compensation can be given; but against the provisions of a statute no relief can be given.'"

The failure to attempt construction of railway upon this second section continued for about 8½ years before this suit was brought, and for a period of about 6½ years, after the exclusion of the time in which the United States had possession of the railways. It is said that the government should be estopped from prosecution of this suit because it redelivered possession of this right of way to the railway company on March 1, 1920. The possession by the United States of this portion of undeveloped right of way was at best merely nominal during its period of control of the railway, and at the time it relinquished control less than 5 years had elapsed since the grant had been approved by the Secretary of the Interior, and very much less than five years after the deduction of the period of government control. None of the expenditures, which were made, were made in

the construction of a railway upon it. The government did not act, nor did it acquiesce, in recognition of any act whereby the railway company manifested its intention to build this section of railway. There was neither waiver nor estoppel of the right to claim a forfeiture of this section of right of way. The work required to be done was not performed either within the period of 5 years provided by the statute, nor was it performed within a reasonable time. Davis v. Gray, 16 Wall. 203, 229, 230, 231, 21 L. Ed. 447.

For the reasons stated, the decree will be affirmed as to the right of way over the public lands granted to the Castle Valley Railway Company, in pursuance of its application therefor, filed in the office of the register and receiver of the United States land office at Salt Lake City, Utah, on or about June 23, 1902, and will be modified, with directions to the District Court to enter a decree forfeiting to the United States the right of way over the public lands granted in pursuance of the application of the Denver & Rio Grande Railroad Company filed with the register and receiver of the United States land office at Salt Lake City, Utah, on or about January 12, 1914, as prayed in the bill of the appellant. The appellant will recover its costs in this court.