WILLIAM F. SHERMAN, SECURITIES COMMISSIONER ET AL *v.* HALLMARK LOAN & INVESTMENT CORPORATION

5-5414                                         462 S. W. 2d 840

Opinion delivered February 8, 1971

*Ted Sanders* and *Joe Purcell,* Attorney General; By: *Mike Wilson,* for appellants.

*Pope, Pratt, Shamburger, Buffalo & Ross,* for appellee.

GEORGE ROSE SMITH, Justice. This action was brought by the appellee Hallmark to obtain a declaratory judgment finding that it is a duly authorized industrial loan institution within the purview of Act 111 of 1941. Ark. Stat. Ann., Title 67, Ch. 10 (Repl. 1966). The action was resisted by the defendants, the Securities Commissioner and the Bank Commissioner, who contend that Hallmark never substantially complied with the requirements of Act 111. The trial court, sitting without a jury, found that Hallmark had acted as an industrial loan institution ever since its organization in 1927, that Hallmark did comply with Act 111, and that Hallmark is entitled to a certificate authenticating its existence as an industrial loan company. The sole question here is whether there is any substantial evidence to support the circuit court's judgment.

Many of what would be the controlling facts have been lost in the mists of time. The corporation that is now Hallmark was organized in 1927 under the name, Union Industrial Loan Corporation. The company entered the industrial loan business and was so engaged when Act 111 became a law without the governor's approval, on March 3, 1941.

Section 3 of Act 111 provided that existing companies such as Union Industrial might become industrial loan institutions under the act by making a written application to the Bank Commissioner within 30 days after the approval of the act. Ark. Stat. Ann. § 67-1003. The Bank Commissioner was required to issue the requested certificate of authorization if he concluded, either from his own files or from an examination of the corporation's condition, that the net worth of the corporation was not less than the par value of its outstanding capital stock.

At the trial the defendant commissioners introduced three letters taken from the Bank Commissioner's files, having to do with Union Industrial's application

for authority to do business under Act 111. On March 27, 1941, the Bank Commissioner wrote to Union Industrial, calling attention to its privilege of complying with the act within 30 days after its effective date, which was actually April 2, 1941. On April 1 Union Industrial wrote to the Commissioner, stating that "this letter is to ask you to consider this our formal application to this act in case this act should be ruled mandatory. In case this Act is not mandatory we would not care to qualify . . . " On April 3 the company wrote this one-sentence letter to the Commissioner: "Confirming our phone conversation this p.m., this will be our request to withdraw our application for compliance with Act No. 111, 1941." Except for those three letters, there is no direct proof of what happened in 1941.

Section 3 of Act 111 also provided that the Bank Commissioner should issue certificates of authority to corporations qualifying to do business under the act. All other persons, firms, or corporations were prohibited from using in connection with their business or in their stationery or advertising the phrase "industrial loans," "industrial plan of loans," or "industrial lending," in such a way as to create a belief that the party was authorized to engage in business as an "Industrial Loan Institution."

For 26 years, from 1941 until 1967, the appellee company did business in North Little Rock as Union Industrial Loan Corporation. If the concern was actually violating the statute by using such a corporate name, no one raised any question about that fact. The company's financial records were duly examined through the years by the public authorities. The 1962 report of examination by the Securities Commissioner was introduced in evidence. That report was prepared upon a printed form on which the examiner had crossed out the words "Credit Union," as descriptive of the company, and had typed in the words, "Industrial Loan Co." Finally, in 1967, the Securities Commissioner questioned Hallmark's authority to act as an industrial loan company, with the result that this suit was filed.

In our opinion there is substantial evidence to support the trial court's decision. The three 1941 letters are decidedly inconclusive. The company first sought to qualify under the act within the 30-day period. After the expiration of that period, and in the light of a telephone conversation about which nothing can be known, the company made a request that its application be withdrawn. A former director of the company testified without objection that the company manager, who signed that letter, had no authority from the board of directors to withdraw the application. It is certainly possible that the withdrawal request was never honored and that the company's application was approved. Certainly its course of conduct during the succeeding quarter of a century affords credence to that view. The Commissioner's acquiescence in the company's status as an industrial loan company of course does not estop the State, but it can fairly be regarded as additional evidence supporting the trial court's judgment. Upon the record as a whole we cannot say that there is no substantial evidence to support the judgment.

Affirmed.