FOOTE'S DIXIE DANDY, INC.
*v.* Henry L. McHENRY, Administrator
of Arkansas Employment Security
Division et al

80-95                                     607 S.W. 2d 323
Supreme Court of Arkansas
Opinion delivered October 20, 1980
Rehearing denied December 8, 1980

*Johnson & Tarvin*, by: *William E. Johnson*, for appellant.

*Thelma M. Lorenzo*, for appellees.

DARRELL HICKMAN, Justice. The appellant, Foote's Dixie Dandy, Inc., a corporation which operates several retail grocery stores, filed suit in the Ashley County Chancery Court to prevent the Arkansas Employment Security Division from collecting over $20,000.00 in unemployment insurance contributions which the State claimed were owed by Foote's.

The chancellor found for the State, rejecting Foote's argument that it had substantially complied with the law. Foote's also argued that the State was estopped to collect the

contributions and that the State had waived its collection rights. These arguments were also fruitless. We find the State can be estopped in this case from collecting the additional assessment and reverse the chancellor's decree, remanding the case for additional proceedings. In doing so, we abandon a principle of law that we previously followed, which was that the State can *never* be estopped because of the acts of its agents.

This case concerns Foote's failure to file a request in 1971 for a transfer of a favorable past record. If Foote's had filed the request, it would have been entitled to the benefit. Because of Foote's failure, the State seeks to collect Employment Security Division contributions for the past five years at a higher rate.

The facts are virtually undisputed. As early as 1967 the Footes, father and son, operated two grocery stores in Ashley County, one in Hamburg and one in Crossett. The stores were operated under the name of Foote's Grocery, Inc. The father ran the store in Hamburg, the son ran the Crossett store. In 1971, it was decided for business reasons that a separate corporation should be formed. The Crossett store was transferred to this new corporation and a majority of that corporate stock was taken by the son. The new corporation is the appellant, Foote's Dixie Dandy, Inc.

The older corporation, Foote's Grocery, Inc., had a good rating with the Employment Security Division because of its past experience. Ratings by the Employment Security Division are based on, among other things, the amount of claims made against contributions by a particular employer. Fewer claims result in a favorable rating.

The new corporation changed nothing as far as the Foote's store in Crossett was concerned. It had the same employees, same management, and the same location. A certified public accountant who handled all of the Foote's business talked to a Mr. Yates, a field auditor of the Employment Security Division, about the procedures the new corporation should use in complying with employment security law. The C.P.A. testified that the auditor told him, (1)

nothing should be done except to report that a new name was being used and, (2) that the same number which the old corporation used should be retained in all reports. The auditor, Mr. Yates, was not called as a witness and the chancellor found as a fact, "That Mr. Yates, field auditor for the defendant, did in 1971 inform the plaintiff's agent that no further documentation (application) was necessary to utilize the favorable rate. . . ."

The new corporation filed quarterly reports with the Employment Security Division thereafter under the name of the new corporation but using the same number as the older corporation. Beginning at least as early as the first quarter of 1972, Foote's Dixie Dandy acquired a new Federal Identification Number and began putting this new number on its reports to the Employment Security Division. Under cross-examination, the supervisor of the Rate Unit for Employment Security Division admitted that a 1972 return showed "Foote's Dixie Dandy, Inc., Crossett, Arkansas" at the bottom and this return had been hand certified. However, the supervisor testified that this was certified as a multiple unit under Foote's Grocery.

For five years, reports were filed with no action whatsoever by either party. The new corporation paid in during this period contributions of $36,344.67 and claims were made against these contributions that amounted to $11,962.92.

Sometime around 1975, Mr. Yates retired and a new auditor was assigned to the Ashley County area. He discovered that Foote's had never filed a request back in 1971 asking for a transfer of the favorable rating that the old corporation enjoyed. As a result the wheels of government began to turn.

The Employment Security Division discovered that Foote's had not paid as a new company for those five years. Since it had not requested the favorable rating that it had been entitled to, the Employment Security Division claimed that over $20,000.00 in additional contributions were due.

This suit was brought by Foote's to prevent the collec-

tion of the additional contributions.

The law in 1971, Act 32 of 1959, provided that anyone acquiring a "segregable and identifiable" portion of a business should make application to the Employment Security Division Commissioner within thirty days to claim the benefit experience of the former owner.[1] If an entire business was acquired, then the transfer was automatic and the new owner was entitled to keep the former rating. If only a partial transfer occurred, then an application had to be made. A partial transfer was made in this case since the ownership of the Crossett store, but not the ownership of the Hamburg store, was changed over to the new corporation.

The Employment Security Division never did call its auditor, Mr. Yates, as a witness. In fact, no inquiry was made of Yates as to whether he had, in fact, told Foote's accountant that a report did not have to be filed or a request made for a transfer. At that time there was no form in existence for making such a report. (The State is not criticized for not calling Yates as a witness. It had a right to rely upon the principle of law that the State cannot be estopped by the unauthorized acts of its agents.)

The State's position is that the report had to be filed and the Commissioner had to make certain findings before a transfer could be made, therefore, the transfer was not automatic; consequently, Foote's must pay. That is not what an Employment Security Division official said at the trial. James A. Waites, Chief of Contributions, Employment Security Division, testified as follows concerning the old law:

. . .

Q. And then, under the old law, though, there was no requirement, was there, of an actual transfer by the Commissioner? This is the brown book.

A. Under the brown, in the brown book, if the request was made, the request was granted for a partial transfer, if it were made timely.

---

[1]Act 32 of 1959 was replaced by Act 35 of 1971.

Q. Okay. But, under the new law, in other words, the Commissioner has got to take action, whereas under the old law it was more or less automatic. Is that correct?

A. Well, sir, as a practical matter, it is automatic now.

Q. But, I am talking about the way the law reads. Under the old law there was no requirement that the Commissioner go ahead and make a finding and determination, and give them the permission to do this. Is that correct?

A. That's true. . . .

There is no doubt then that the transfer in this case would have been made if a request had been filed. It is undisputed that an auditor for Employment Security Division told Foote's such a request was not necessary. Also, there is no dispute that Foote's had a good record. Everything was done that should have been done *except* that a request had not been filed five years before. The C.P.A. for Foote's testified that he had always dealt with Yates on matters involving the Employment Security Division. It was also admitted that all the funds that were due to the State, based on a favorable rating, were paid for a period of five years and the new corporate name was timely reported to the State of Arkansas. In fact, Foote's is entitled to a credit of $2,561.00. There is no hint of bad faith on the part of Yates, the Footes, the C.P.A., or anybody else concerned in this matter.

There is no doubt that the State would have granted the transfer if a request had been made. Not to do so, based on this record, would have been an arbitrary and unreasonable act.

The State's claim is simply that it cannot be estopped regardless of the facts. Its position is based on a series of cases which announce the principle that the State cannot be estopped by the actions of its agent. *See, Arkansas State Highway Commission* v. *Lasley,* 239 Ark. 538, 540, 390 S.W. 2d 443; *Arkansas State Highway Commission* v. *McNeil,* 222 Ark. 643,

645, 262 S.W. 2d 129 (1953); *Terminal Oil Co.* v. *McCarroll, Commr. of Revenues*, 201 Ark. 830, 835, 147 S.W. 2d 352 (1941); *Superior Bathhouse Co.* v. *McCarroll, Commr. of Revenues*, 200 Ark. 233, 237, 139 S.W. 2d 378 (1940); *Sherman* v. *Hallmark Loan & Investment Corp.*, 249 Ark. 964, 462 S.W. 2d 840 (1971); *Belvedere Sand & Gravel Co.* v. *Heath*, 259 Ark. 767, 536 S.W. 2d 312 (1976).

We do not overrule those cases but we do abandon the principle stated in those cases that the state can *never* be estopped by the actions of its agents. Estoppel is not a defense that should be readily available against the state, but neither is it a defense that should never be available. Estoppel of the state is a principle of law recognized in more and more jurisdictions.

The United States Court of Appeals, Eighth Circuit, has found that:

> The equitable claims of the state or of the United States are no stronger than those of an individual under like circumstances, and a state or the United States may waive a claim and be estopped from the assertion of a claim under circumstances that would estop an individual from the assertion of a similar claim. *United States* v. *Denver & R.G.W.R. Co.*, 16 F. 2d 374 (8th Cir. 1926).

Estoppel is governed by fairness, as the court said in *United States* v. *Lazy FC Ranch*, 481 F. 2d 895 (9th Cir. 1973):

> We think the estoppel doctrine is applicable to the United States where justice and fair play require it. . . . This court has also followed this rationale and permitted the estoppel defense against the government in cases where basic notions of fairness required us to do so.

In *Gestuvo* v. *District Director of the United States Immigration and Naturalization Service*, 337 F. Supp. 1093 (C.D. Cal. 1971), the court recognized estoppel when certain essential elements were present. As the court stated:

> Four elements are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

In explaining the application of estoppel, the court, in *Gestuvo*, continued:

> [T]he requirements of morals and justice demand that our administrative agencies be accountable for their mistakes. Detrimental reliance on their misrepresentations or mere unconscientiousness should create an estoppel, at least in cases where no serious damage to national policy would result ... The contrary conclusion sacrifice 'to form too much of the American spirit of fair play in both our judicial and administrative processes.'

Other jurisdictions have come to the same conclusion. These states include: Alabama in *Brown* v. *Tuskegee Light & Power Co.*, 232 Ala. 361, 168 So. 159 (1936); Calfornia in *People* v. *Gustafson*, 53 Cal. App. 2d 230, 127 P. 2d 627 (1942); New York in *Lee* v. *State*, 187 Misc. 268, 64 N.Y.S. 2d 417 (1946); and Pennsylvania in *Commonwealth* v. *Union Traction Co.*, 327 Pa. 497 (1937).

The decisions of the federal and state courts favoring estoppel of the government are closely aligned with the abandonment of the doctrine of sovereign immunity. This trend was recognized by Kenneth Culp Davis in his *Administrative Law Treatise* where he said:

> Because of the erosion of the doctrine of sovereign immunity the cases estopping the government may largely represent the law of the future, even though they are still exceptional. § 17.03 at 504.

Arkansas has not abandoned the doctrine of sovereign immunity which is in our constitution. Ark. Const. art. 5, §

20. However, we recently, in effect, applied the doctrine of estoppel against the state where justice required such a finding. In *Hammers* v. *State*, 261 Ark. 585, 550 S.W. 2d 432 (1977), the appellant had agreed to testify against an accomplice in return for the prosecuting attorney's promise to *nolle prosequi* the charge against her. As a result, she made an oral statement incriminating herself. The trial court found that the appellant was not entitled to immunity because the agreement between the appellant and the prosecuting attorney had not been approved by the court. In vacating the remanding, we determined that the appellant was entitled to a determination whether the agreement made, even though unauthorized, should be enforced on equitable principles. We stated that:

> Although the state is not estopped by the unauthorized act of its agent, [citations omitted] appellant should be equitably entitled to have her agreement with the prosecutor enforced if she complied with its terms in good faith and made a full, fair, free and candid disclosure of all facts pertaining to the crime charged, even though that requires barring her prosecution for the crimes. *Hammers* v. *State, supra*, at 600.

Estoppel will protect the citizen only to the extent that he relied upon actions or statements by an agent. In the present case there was good faith reliance by Foote's C.P.A. on the advice of the Employment Security Division's field agent. There was no reason for the C.P.A. to question the agent's credibility since he had dealt with him frequently on Employment Security Division matters and no problems had arisen. Fairness had to be a two edged sword. People who deal with the state must be fair and the same principle should apply to the state. Justice Holmes made the remark many years ago that "Men must turn square corners when they deal with the government." *Rock Island, Arkansas & Louisiana R.R.* v. *United States*, 254 U.S. 141, 143 (1920). Years later, two commentators added the logical corollary to Holmes' remark: "It is hard to see why government should not be held to a like standard of rectangular rectitude when dealing with its citizens." Mcquire & Limet, *Hobson's Choice and Similar Prac-*

*tices in Federal Taxation*, 48 Har. L. Rev. 1281, 1299 (1935). We agree with both ideas.

We are satisfied that all the circumstances of this case warrant applying the doctrine of equitable estoppel. The facts are that *only* a form was not filed which would have been routinely approved if it had been filed; that there was not a scintilla of evidence of bad faith; and that an important agent of the State of Arkansas, clothed with considerable authority; had told Foote's that it did not have to file any further documentation. These elements were important criteria in *United States* v. *Georgia-Pacific Co.*, 421 F. 2d 92, 96 (9th Cir. 1970). The State had all the necessary information in the present case — the name of the new corporation, the record of the older corporation and timely filed reports. The Footes were ignorant of the true facts as required in *Smale & Robinson* v. *United States*, 123 F. Supp. 457 (S.D. Cal. 1954). These factors, as well as others, satisfy us that estoppel should be applied in this case.

We are not unmindful of the wisdom of those decisions denying estoppel. In most instances estoppel would not have been a justifiable defense. But in this case, except for a routine application not filed, there would have been no attempt by the State to collect the contributions.

The chancellor found, and the State argues heavily, that there was more involved than simply filing a form. The chancellor believed that there had to be some findings by the Commissioner, but those are empty arguments in view of the record in this case and the testimony of Waites. Furthermore, there is no argument made at all as to why a Commissioner would have refused at that time to transfer the favorable rating. The only suggestion made is that some employer might not have wanted a transfer. Obviously that is not the case before us.

In this case the State may not collect additional assessments and the decree of the chancellor is reversed.

Because the State was entitled to rely upon a principle of law that we now abandon, it should be allowed to offer proof

as to whether its auditor Yates did in fact make the statements attributed to him. Therefore, the cause is remanded for the sole purpose of permitting the State the opportunity of calling Yates as a witness on this fact issue. If Yates agrees that he did so advise the C.P.A., then the chancellor will enter a decree for the appellant; if Yates disagrees, or if it appears the facts are in dispute, the chancellor will make a finding and enter a decree consistent with this opinion.

Reversed and remanded.