### Judy JONES *v.* William F. EVERETT, Director of Labor and NEKOOSA PAPER, INC.

E 81-294                                              629 S.W. 2d 305

Court of Appeals of Arkansas
Opinion delivered March 3, 1982
[Rehearing denied April 7, 1982.*]

Appellant, *pro se.*

*Gary Williams,* for appellee.

JAMES R. COOPER, Judge. Appellant voluntarily quit her last work as a secretary with Nekoosa Paper, Inc., on May 29, 1981, to move with her husband to El Dorado, Arkansas. After her arrival in El Dorado on June 7, 1981, she filed a claim for unemployment insurance benefits on June 8, 1981. On June 23, 1981, the appellant filled out additional forms and indicated that she had not contacted any person seeking work, but that she had checked with friends concerning job openings. She was denied benefits by the Agency, and filed a notice of appeal to the Appeal Tribunal. At a hearing held before the appeals referee on July 20, 1981, she testified that she had contacted four potential employers during the period of time in question, that is between June 7, 1981, and June 23, 1981. The appellant further testified that the reason for the discrepancy between her earlier statement to the Agency concerning her failure to contact any employers in person was that she understood the Agency representative to indicate that those persons should be listed to whom she had actually made application. She testified that several of the

*MAYFIELD, C.J., would grant the petition.

employers she contacted were not accepting applications at that time.

The appellant's letter notifying the Agency that she wished to appeal offers a great deal of insight into the problems claimants encounter when applying for employment benefits under our system in Arkansas. She stated:

> In my opinion, I have followed every procedure you have set forth. Upon arriving in El Dorado, I immediately went to the Employment Security Division and signed up for employment. At that time I was not informed of any particular procedure I was to follow in seeking employment. The only information I was given was to fill out the paper I was given and return on 6-23-81 to see a film that would give me complete details regarding my responsibilities and unemployment insurance. . . .

Under Ark. Stat. Ann. § 81-1106 (a) (Supp. 1981), an individual who quits employment for the purpose of accompanying his spouse to a new place of residence is disqualified from benefits if, upon arrival at the new place of residence, that person does not make an immediate entry into the labor market. The reason for this rule is obvious: unemployment benefits are designed to protect workers who, through no fault of their own, become unemployed and who, through their efforts, are obviously seeking work. Unemployment compensation is not designed to protect those persons who are not seeking work, who quit without cause, or who are discharged for misconduct.

The function of the Employment Security Division is to administer the Act and to make sure that only those persons who are entitled to benefits receive them. The law imposes various requirements on claimants, such as the requirement of registration and weekly reporting and that the claimant do those things which a reasonable person would do to seek work. Ark. Stat. Ann. § 81-1105 (Repl. 1976). All these requirements are for the benefit of the public in general and to prevent the payment of benefits to persons who are not entitled to them.

However, in this case and in many others which this

Court has seen, the Board of Review has referred to a requirement that the persons immediately enter the labor market. That statutory requirement has no definition, and the Board has not adopted a regulation which gives any guidance as to what constitutes an immediate entry into the labor market. If this Court does not know what the Employment Security Division considers an *immediate* entry into the labor market (except by reference to isolated cases and unique fact situations), then how can a claimant possibly know. This appellant, as is the case with many other claimants, was told when she initially filed for unemployment benefits that she should return two weeks later to see a film and to receive a booklet outlining her rights and responsibilities under the Act. There is no question that she followed proper procedures after June 23, 1981, and we presume that her ability to do so was based, at least in part, on the information she received from the film and her second appearance at the ESD office. During the two-week interval from her first visit until her second she had absolutely no guidance whatsoever and was never advised as to what was required of her in order that she might draw benefits during her period of unemployment.

The law does not specify how many job contacts are necessary during any given week; we have found no cases which outline specific requirements as to job contact numbers; and there are no regulations in existence which indicate how many job contacts are necessary. So far as this Court knows, there is not even a consistent internal policy within the Employment Security Division which indicates how many contacts will be accepted in a given case.

This Court has indicated in several recent opinions that claimants are entitled to a higher degree of specific guidance in knowing what is expected of them in the way of efforts to secure employment, especially since they risk the loss of eligibility. See, *Eubanks* v. *Daniels,* 267 Ark. 888, 591 S.W. 2d 673 (Ark. App. 1979).

In *Rainbolt* v. *Everett,* 3 Ark. App. 48, 621 S.W. 2d 877 (1981), we held that the Employment Security Division could be estopped to deny certain things based on the representation of its agents. Here, there was no direct

representation by the agent that appellant need do nothing during the two weeks after her first encounter with the Employment Security Division, but that was certainly not an unreasonable belief on her part.

In *Foote's Dixie Dandy, Inc.* v. *McHenry,* 270 Ark. 816, 607 S.W. 2d 323 (1980), the Arkansas Supreme Court held that although estoppel is not a defense that should be readily available against the State, it is not a defense which should never be available. The Supreme Court held that the State was estopped from collecting additional assessments in unemployment insurance contributions by a corporation's reliance upon statements of a field auditor of the Employment Security Division. In *Rainbolt, supra,* we pointed out that the Arkansas Supreme Court relied on *Gestuvo* v. *District Director of the United States Immigration and Naturalization Service,* 337 F. Supp. 1093 (C.D. Cal. 1971), in deciding *Foote's Dixie Dandy, supra.* The Supreme Court quoted from *Gestuvo* as follows regarding estoppel:

> Four elements are necessary : (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Applying the rationale of *Rainbolt* and *Foote's Dixie Dandy* to the case at bar, it appears that the State should be estopped to deny benefits from the period June 7, 1981, to June 23, 1981, based on its own conduct. Obviously the Employment Security Division is aware that it plans to apply some unknown standard in determining whether workers have immediately entered the labor market upon arrival at a new place of residence. The Agency, by advising appellant that she was to return in two weeks to see a film and receive a booklet concerning her rights and obligations under the Act, has created a situation where the claimant may reasonably believe that nothing more is necessary other than to return on the assigned date. The claimant, as are most claimants in these type cases, was obviously ignorant

of the fact that the Employment Security Division had any requirement regarding job contacts, at least prior to her viewing of the film, and last, the claimant has obviously relied on the Employment Security Division's conduct to her detriment in that she has been denied benefits.

Therefore, on these facts, and based on prior holdings of this Court and the Arkansas Supreme Court, we hold that the Employment Security Division is estopped to deny benefits to the appellant. Where the claimant has relied on the failure of Employment Security Division to advise of any additional requirements, that Agency should not be allowed to turn around and impose additional requirements, which were unknown to the claimant, in order to deny her benefits. Obviously, a claimant must make an attempt to find a job in order to be qualified under the Act, but if the Agency wishes to impose specific requirements such as two job contacts a week, four contacts a week, or any other such number, claimants should be advised of what those requirements are at the time they make initial contact with the Agency.

We reverse the decision of the Board of Review and remand the case with directions to award benefits under the Act.

Reversed and remanded.

MAYFIELD, C.J., and CRACRAFT, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. I would affirm the Board of Review because its decision is supported by substantial evidence and under those circumstances it is our duty to affirm. *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W. 2d 954 (1978); *Hodnett* v. *Daniels*, 271 Ark. 479, 609 S.W. 2d 172 (Ark. App. 1980).

Also, I do not agree with some of the language in the majority opinion or with the implications of that language.

Certainly the Employment Security Division should administer the law fairly and reasonably and this includes providing necessary and proper information about their

rights and duties to those who apply for unemployment benefits.

But I think the meaning of terms which have not been defined in an act passed by the General Assembly should be established on a case by case basis through the administrative and adjudication process of the agency and the courts.

For example, I do not subscribe to the notion that the Employment Security Division should establish by regulation what "immediate entry into the labor market" means. Nor do I agree that it can, or should, be defined as two, four, or any other definite number of job contacts a week.

When applicable, I think a claimant for unemployment benefits should be told about the duty to immediately re-enter the labor market but whether an immediate re-entry has been accomplished or not should be decided on a case by case basis in light of the attendant circumstances. It is most difficult for anyone, even courts, to make definite, mechanical — and perhaps arbitrary — rules which will do justice in all future situations.

CRACRAFT, J., joins in this opinion.

Supplemental Opinion on Denial of Rehearing
delivered April 7, 1982

JAMES R. COOPER, Judge. Appellee, Director of Labor, has filed a petition for rehearing in this case, which raises several points on which appellee urges reconsideration of our original opinion in *Jones* v. *Everett*, 4 Ark. App. 169, 629 S.W. 2d 305 (1982). The petition for rehearing is denied, but we are issuing this supplemental opinion to clarify our original opinion.

The scope of review by this Court in unemployment cases is governed by the substantial evidence rule. Ark. Stat. Ann. § 81-1107 (d) (7) (Supp. 1981). This rule requires that this Court review the evidence in the light most favorable to the appellee, and if there is substantial evidence to support the decision by the Board of Review, its decision must be affirmed. *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W. 2d 954 (1978).

In the case at bar, the Board of Review made a factual determination that the appellant did not "immediately upon arrival at the new place of residence, enter the labor market". The Board found that the appellant had not made sufficient job contacts. The only evidence in the record, when reviewed in the light most favorable to the Board of Review, shows that the appellant made some contacts with potential employers. Our opinion, as originally issued, holds that appellee is estopped to deny that the appellant made sufficient job contacts. The estoppel was based on the actions of the agency at its initial contact with appellant.

Appellee argues that our original opinion was in error, in that no one testified that the appellant had not received a booklet outlining her rights and responsibilities at the time of her original contact. Although the appellee is correct that direct testimony was never given on that point, such a conclusion is inescapable when the record is considered in its entirety. Appellant testified that, "The *only* information I was given was to fill out the paper I was given and return on 6-23-81 to see a film that would give me complete details regarding my responsibilities and unemployment insur-

ance." (T. 10) [Emphasis added]. Nothing appears in the record to contradict that testimony.

The application of the doctrine of estoppel has no effect whatsoever on a claimant's burden of proof in unemployment cases. That burden still rests, as it should, on the claimant. *See, Tate* v. *Director, Arkansas Employment Security Division,* 267 Ark. 1081, 593 S.W. 2d 501 (Ark. App. 1980).

We note that two exhibits are attached to the petition for rehearing, and we are urged to consider them as support for appellee's position. We are unable to consider these documents. This Court cannot take additional evidence, nor may we consider matters which are outside the record. Ark. Stat. Ann. § 81-1107 (d) (7) (Supp. 1981). Neither document appears in the record of this case, and therefore they must be disregarded.

The petition for rehearing is denied.

MAYFIELD, C.J., would grant the petition for rehearing.