# ARKANSAS EMPLOYMENT SECURITY DIVISION
## v. BEARDEN LUMBER COMPANY, INC.

CA 81-341                                    632 S.W.2d 438

Court of Appeals of Arkansas
Opinion delivered May 5, 1982
[Rehearing denied June 2, 1982.*]

*Thelma Lorenzo, Gary Williams* and *Herrn Northcutt,* for appellant.

*MAYFIELD, C.J., and COOPER, J., would grant rehearing.

*Bridges, Young, Matthews, Holmes & Drake,* for appellee.

TOM GLAZE, Judge. Employment Security appeals from a chancery court decision which reversed an Agency determination requiring Bearden Lumber Company (Bearden) to pay employment security rates based upon the combined rates of Bearden and the now defunct Arkansas Pallet Company, Inc. Employment Security argues on appeal that: (1) Bearden lacks standing; (2) The case has become moot; and (3) The appeal to the Agency was not timely filed. A review of the facts is necessary to understand the legal issues raised in this cause.

Prior to January, 1976, Arkansas Pallet Company, Inc. (APCI) was engaged in the manufacture of pallets at a location in Pine Bluff, Arkansas. Because of difficulties in obtaining raw materials for production, the stockholders and officers decided to discontinue its operation and liquidate the company's assets. Mr. John Ed Anthony decided a pallet operation would fit well into his operation of a lumber company in Bearden, Arkansas, and in January, 1976, he negotiated an agreement with APCI for the sale of its equipment and hard assets. Anthony formed Arkansas Pallet Manufacturing Company (APMC) and located APMC in Bearden, Arkansas. APMC did not acquire any of the accounts receivable, real property or stock of APCI. Upon moving the manufacturing equipment to Bearden, APMC hired local employees. Only two employees of APCI were hired by the new corporation. APCI completely closed its business in February, 1976, and never again resumed business. APMC was formed in March, 1976, and began production in July of that year.

On March 12, 1976, APMC filed its "Report to Determine Liability Under the Arkansas Employment Security Law" as is required under Arkansas law. By letter dated April 20, 1976, Employment Security advised APMC that the employment experience of APCI was being transferred to APMC's account. The letter stated that APMC would assume any benefits risk of the predecessor's employees who might become eligible to draw benefits. APMC was assigned

a rate of 3.1% for 1976. A rating of 3.1% is the rating which is given to any new business that has not developed its own experience rating.

In a letter dated May 6, 1976, APMC's attorney responded to Employment Security's April 20 letter, stating APMC had not acquired all of the business of APCI, and it was, in fact, a separate corporation that purchased only certain equipment from APCI. Although not stated in the May 6 letter, it was apparently APMC's position that it should not be assigned APCI's experience rating since APMC had not purchased all the business of APCI.

The next letter in the record reflects that Employment Security on May 11, 1976, offered to review any additional information or documentation APMC desired to offer pertaining to its acquisition of APMC. In the same letter, Employment Security indicated that after it received this information, Employment Security would notify APMC of the results.

There is nothing in the record which shows APMC submitted additional information. Nor is there any evidence indicating that Employment Security took further action in connection with the exchange of letters between Employment Security or APMC's attorney.

Subsequently, Bearden acquired APMC in October, 1977. By letter dated January 24, 1978, Employment Security notified Bearden that APMC's experience rating would be transferred to Bearden since it had acquired that company. On February 16, 1978, Bearden's accountant wrote Employment Security notifying it of an error in its experience rating notice and requesting Bearden's account to be correctly adjusted. The basis of this alleged error was attributed to the experience rating Employment Security previously had assigned APMC from APCI on April 20, 1976.

After an exchange of correspondence, Bearden challenged Employment Security's rate decision by filing an application for review with the Unemployment Insurance Director on February 27, 1979, approximately one year after

Bearden received its rate assignment. The Director upheld Employment Security's rate assignment to Bearden. He held that since Bearden acquired APMC, Bearden was bound by APMC's previous Employment Security experience rating from which it failed to appeal in 1976.

Bearden appealed the Director's decision to chancery court, and the chancellor reversed. The chancellor found that APMC had timely filed for a review of its rate transfer from APCI by the Employment Security Division and that Employment Security had never notified APMC of any further action or decision. This being true, the chancellor concluded Bearden was not now barred from questioning the prior rate assignment given APMC, which Bearden ultimately fell heir to. The chancellor added that even if APMC had failed to timely file a petition for review, Employment Security had waived this issue as a defense or was otherwise estopped to raise it.

After reaching the merits of Bearden's claim, the chancellor finally concluded that the rating previously transferred to APMC was in error because: (1) Under Ark. Stat. Ann. § 81-1108 (e) (Repl. 1976), it would only be assigned APCI's rating experience if APMC acquired "substantially all of the assets" of APCI; and (2) The evidence reflects APMC did not acquire all of APCI's assets. The chancellor held Bearden's experience rating should be recalculated since its rating had erroneously been based on that previously transferred from APCI to APMC.

We believe the chancellor erred. The controlling law is set forth in Ark. Stat. Ann. § 81-1108 (c) (3) (V) (Repl. 1976), which in relevant part provides:

> The determination of the Director . . . shall become *conclusive and binding* upon the employer, unless within thirty (30) days . . . the employer files an application for review and redetermination, setting forth his reasons therefor. [Emphasis supplied.]

As previously noted in our discussion of the facts in this cause, APMC was notified of its contribution rate by letter

dated April 20, 1976. This letter directed that any objections be presented in writing to the Employment Security Agency within thirty days. In his May 6, 1976 letter, APMC's attorney requested the Agency to inform him as to "what procedure is followed in appealing the transfer of experience rating." He also offered to produce any and all documentation to satisfy the Agency that APMC did not acquire the business of APCI. When the Agency replied in its letter of May 11, 1976, it stated:

> We will be happy to review any additional information and documentation pertaining to the acquisition which you may wish to submit. After our review you will be notified of the results.

> If you or your client cannot accept the decision then you may write to Mr. Cecil L. Malone, UI Director, and request a hearing.

After the foregoing response by the Agency, neither APMC nor its attorney offered additional information or documentation to the Agency. Nor did APMC appeal in accordance with the procedure outlined in the Agency's May 11 letter or as prescribed under § 81-1108, *supra*. Neither APMC nor Bearden considered this matter any further until several months after Bearden acquired APMC in October, 1977. In fact, until January 24, 1978, APMC and Bearden regularly paid contribution rates in accordance with the earlier April 20, 1976 rate transfer determination, raising no questions as to its validity since the May 6, 1976 letter written by APMC's attorney.

From the record before us, we fail to find any evidence that APMC timely and correctly filed an application for review of the April 20, 1976 rate determination. Employment Security's May 11 letter clearly suggested APMC could submit additional information or appeal by writing the Unemployment Insurance Director, requesting a hearing. APMC did neither. Section 81-1108 (c) (3) (V), *supra*, clearly provides for a finality of contribution rates assigned employers. If the law had not so provided, the Employment Security Agency would be endlessly reviewing, recalculating

and reimbursing contribution amounts. Here, there simply was no timely appeal. We fail to see, on the record before us, how this responsibility for failure to appeal can be placed with anyone except APMC. Bearden subsequently purchased the business of APMC, and there is nothing in the record which would indicate that it should not be charged with APMC's rating experience as is provided under § 81-1108 (e).

Reversed.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. Under the majority opinion the appellee does not lose on the merits of the case but on what I regard as a bureaucratic technicality.

It is said that the appellee is stuck with the payment of contributions to the unemployment compensation fund based on the experience rating of a company which failed to appeal from a determination made by the Employment Security Agency in April of 1976.

That determination is held to have been made when the agency wrote another company saying it was transferring to it the experience of the first company. This letter ended with the sentence, "If you have any objections to this transfer, notify this Agency in writing within 30 days; otherwise, the transfer will become final."

Sixteen days later there was a reply which, in addition to asking what procedure is followed in appealing, said any documentation the agency desired to satisfy it that the transfer should not be made would be produced. The agency answered with a letter dated May 11, 1976, containing these paragraphs:

> We will be happy to review any additional information and documentation pertaining to the acquisition which you wish to submit. *After the review you will be notified of the results.* (Emphasis added.)

If you or your client cannot accept the decision then you may write to Mr. Cecil L. Malone, UI Director, and request a hearing.

The majority opinion states no additional information was submitted and no hearing was requested, and, therefore, there was no timely appeal.

But from its letter of May 11 it is clear that the agency had not yet made a final determination and that it promised to notify the company when such a decision had been made. The letter specifically said *then* a hearing could be requested. Rather than stick this company with something it does not owe because nothing further was sent to the agency, I would let the company pay only what it owes because nothing further was sent to the company by the agency *as it promised to do.*

In *Foote's Dixie Dandy* v. *McHenry,* 270 Ark. 816, 607 S.W.2d 323 (1980), the Arkansas Supreme Court held that the Employment Security Agency could be estopped by statements made by its auditor and in *Rainbolt* v. *Everett,* 3 Ark. App. 48, 621 S.W.2d 877 (1981) the Arkansas Court of Appeals also held the agency could be estopped by representations of its agents. In the instant case, I would hold that the agency is estopped to claim that there was a final determination back in 1976.

COOPER, J., joins in this opinion.