Mr. Kent J. Rubens Chairman, Crittenden County Election Commission P.O. Box 768 West Memphis, Arkansas 72303
Dear Mr. Rubens:
This is in response to your request for an opinion regarding the authority to redistrict the wards of the City of Crawfordsville, a city of the second class, and the subsequent election of aldermen from the wards. Your specific questions are as follows:
 1. Can the Commission adopt a plan which is binding upon the town of Crawfordsville without the consent of its legislative body?
 2. Assuming that the Commission cannot do so, what is the effect on those persons who in good faith relied upon the advice given by the clerk now that the deadline for filing has passed?
You state in your correspondence that the Crittenden County Election Commission ("Commission") adopted a redistricting plan at the request of the mayor of Crawfordsville, and that the city council also proposed a plan which was disapproved by the mayor. You advised the county clerk that the Commission's plan would be followed for the city. You state that you have been told that candidates were advised by the city attorney that the plan adopted by the Commission was not binding, and that a member of the Commission advised the clerk that a person should file as if the Commission had not adopted a plan. You now have a situation, you indicate, where some candidates filed under the plan adopted by the Commission, and others under the plan as it existed prior to the adoption of a plan by the Commission. You state that these facts appear to be undisputed.
It is my opinion that the answer to your first question is "no." It seems clear, under A.C.A. §§ 14-44-101 and -102 (1987), that the authority to redistrict the wards of cities of the second class rests with the city council. These Code sections state as follows:
 (a) As soon as practicable after an incorporated town becomes a city of the second class, the city council shall form the city into the number of wards that, to it, will seem to best serve the interests of the city.
 (b) It shall be the duty or the council to see that each ward has as nearly an equal population to each of the other wards as would best serve the interests of the taxpayers of the city.
A.C.A. § 14-44-101 (1987).
 (a) City councils in cities of the second class shall have the authority to redistrict the wards of their cities when they determine that the people can best be served by adding wards, combining wards, or changing ward boundary lines to equalize the populations in the various wards.
 (b)(1) Within ninety (90) days after redistricting, if fifty (50) or more qualified electors in the city are dissatisfied with the division of the city into wards, they shall have the authority to petition the circuit court.
 (2) The court, after due hearing, shall have authority to redistrict the city into such wards as it shall deem best if it finds that the redistricting action by the council was arbitrary and capricious.
A.C.A. § 14-44-102 (1987).
I assume that your second question focuses on those who filed for election from wards resulting from the redistricting by the Commission. As stated above, it is my opinion that the wards that have been established by the city council are the valid wards from which the aldermen are to be elected. See A.C.A. §14-44-102, supra, and § 14-44-103 (1987). The election should be held from these wards. If persons who filed based upon the Commission plan remain as candidates from wards established by the Commission, the possibility obviously exists that a candidate will be elected who in fact is not a resident of the ward as established by the city council. It seems, furthermore, that these persons may not at this point meet the residency requirement because candidates for the office of alderman in cities of the second class must, in accordance with A.C.A. §14-44-103(b)(1)(A), reside in the ward from which they seek to be elected.
My research has revealed no established procedure or helpful precedent regarding the remedies that candidates may have under this scenario. Obviously, the possibility exists that an action in estoppel lies, based upon the alleged misinformation concerning the wards. See generally Foote's Dixie Dandy v.McHenry, 270 Ark. 816, 607 S.W.2d 323 (1980). Arguments regarding estoppel could, it seems, be asserted by candidates in a mandamus action. The questions to be addressed in such an action are, however, predominantly factual. I cannot speculate on the outcome of such a challenge.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh