TERMINAL OIL COMPANY *v.* MCCARROLL, COMMISSIONER OF REVENUES.

4-6176 147 S. W. 2d 352

Opinion delivered February 3, 1941.

*J. G. Waskom,* for appellant.

*Frank Pace, Jr.,* and *Lester M. Ponder,* for appellee.

SMITH, J. The appellant, Terminal Oil Company, began the business of a wholesale dealer in gasoline in the month of April, 1933, at its place of business about one mile north of the city of Osceola, where the company has facilities for receiving gasoline by railroad and by barge on the Mississippi river.

At all times from the beginning the company made monthly reports to the Commissioner of Revenues, as required by law, showing the number of gallons of gasoline received into its tanks by rail and the number received by barge, and the number of gallons deducted at one per cent. for evaporation loss on the whole amount received by the company both by rail and by barge, and paid taxes thereon monthly upon the whole amount received, less the one per cent. for evaporation, which were accepted by the Commissioner of Revenues without objection.

From April, 1933, through February, 1939, the company received into its tanks by rail and by barge 12,168,054 gallons of gasoline, after making the deduction of the one per cent., and paid to the Commissioner a tax on 11,668,364 gallons of gasoline, amounting to $727,762.04. The gasoline received in barges was loaded

into the barges at points along the Mississippi river in the states of Illinois, Tennessee, and Louisiana, and a portion was loaded into barges from railroad tank cars, and a portion was also loaded into the barges from pipelines belonging to the seller of the gasoline; but all of it was transported into this state in barges.

On February 3, 1940, the Commissioner of Revenues filed, in the office of the clerk of the circuit court for the Chickasawba district of Mississippi county, a certificate of indebtedness against the company, to the effect that the company owed back taxes in the sum of $12,794.57 on 197,363.2 gallons of gasoline, and then added a penalty thereto of $2,558.92, making the total amount of the certificate of indebtedness $15,353.49. The Commissioner computed the amount of the back taxes on the difference between the gallonage received in barges, as shown by invoices from the refiners in other states, and the gallonage upon which the tax was paid by the company monthly, as above stated. The company paid the tax monthly at the time of making its reports, not on the gallonage as shown by the invoices from the refiners, but on the gallonage actually received into the storage tanks at Osceola, less the one per cent. thereof which the company deducted for loss by evaporation. The amount of the tax set forth in the certificate of indebtedness, therefore, represents the difference in the gallonage as shown by the invoices from the refiners in other states and the gallonage upon which the tax was actually paid by the company.

The certificate of indebtedness does not call for back taxes on gallonage which had been transported to the company by rail, but is only the tax on the gallonage which had been transported by barge. The back taxes were claimed under act 146 of the Acts of 1929, appearing as §§ 6898-9, Pope's Digest, which allows a deduction not to exceed one per cent. loss for evaporation to dealers who handle gasoline in tank car lots, but does not extend such right to dealers who handle gasoline in barge lots.

The period of time covered by the certificate of indebtedness is from April, 1933, when the company began

business, through February, 1939, for the reason that act 250 of 1939, which became effective at the end of February, gave the right to deduct one per cent. for evaporation loss to dealers who handle gasoline in barge lots as well as to dealers handling gasoline in tank car lots.

The company filed this suit to restrain the enforcement of the certificate of indebtedness, and a temporary order was granted. The Commissioner filed a cross-complaint for the sum called for by the certificate of indebtedness.

On final hearing a decree was rendered to the following effect. The temporary restraining order was made permanent. It was held that the Commissioner could recover no part of the penalty, and no part of the taxes in the sum of $5,574.67, based on the difference between the gallonage as shown by the invoices from the refiners and the gallonage actually received at Osceola; but that the Commissioner should receive the sum of $7,219.90 as the amount of the tax on one per cent. of the gallonage actually received by barge in the company's tanks at Osceola and which had been deducted in making monthly payment of taxes. In other words, the trial court held that the company was not liable for the penalty, and was not liable for the tax on gasoline which evaporated during the course of transportation by barge from other states before it was placed in the company's tanks at Osceola; but did hold the company liable for the one per cent. it had deducted for loss by evaporation after the gasoline had been placed in the reservoir tanks at Osceola and before sale to the retailer.

From this decree the company has appealed; and the Commissioner prayed a cross-appeal, which has not been perfected and is not now insisted upon.

For the reversal of this decree it is insisted by the company that the Commissioner is not entitled to receive the taxes for which judgment was awarded for the following reasons: First, that the recovery is contrary to the statutes on the subject and the decisions of this court construing them, and is contrary to both the state

and federal constitutions. Second, that the gasoline was, under the facts stated, received in tank cars, and the company had the right to a deduction of one per cent. for loss by evaporation. Third, the certificate of indebtedness is unconstitutional, as discriminatory and unjust. Fourth, the Commissioner is bound by the statute which prevents the reassessment of the value on which the tax was paid except for actual fraud of the taxpayer. Fifth, that the Commissioner is bound by his previous interpretations of act 146 of 1929. Sixth, that the Commissioner is barred by equitable estoppel.

We will consider these points collectively, and not serially. The first question naturally is, whether the company was entitled to deduct the one per cent. for evaporation. If so, the other questions are unimportant here.

Act 146 of the Acts of 1929 allows dealers who handle gasoline in tank car lots to take credit for the evaporation loss of not exceeding one per cent. The benefit of this deduction was claimed by a gasoline dealer in the case of *Barnsdall Refining Co.* v. *Ford, Commissioner*, 194 Ark. 658, 109 S. W. 2d 151, who had shipped gasoline into the state in tank truck lots. The insistence there was that this loss occurred in shipping gasoline in whatever manner it may have been shipped, and that all shippers were entitled to claim this deduction. It was held, however, that one claiming exemption from the provisions of a tax statute must bring himself within any exemption found in the statute, and that a shipper in tank truck lots was not entitled to the exemption or deduction given shippers in tank car lots. Here, the shipment into this state was by barge, and not by tank car lots, and it is unimportant to consider how the gasoline was received at the point outside the state from which it was loaded into barges to be shipped into the state. Act 250 of the Acts of 1939 allows the same deduction to barge shippers in quantities of not less than 500 gallons as is allowed shippers in tank car lots; but the tax here claimed accrued before the passage of act 250.

The deduction here claimed is for loss occurring outside this state, and the tax is imposed upon the quantity

of gasoline actually received in this state. In other words, the company is claiming the one per cent. deduction on gasoline actually delivered to it in this state; and it does not appear to be questioned that the company received into the state the quantity of gasoline on which it is asked to pay the tax, and there appears to be no loss of gasoline. on which the tax is sought to be imposed. The holding in the Barnsdall case, *supra,* is to the effect that after the gasoline is received by the wholesaler into this state it is subject to the tax, and its ultimate disposition is immaterial, and that if thereafter there is a loss in quantity through evaporation or failure to use the gasoline, this was an incidental loss or expense which the wholesaler must stand. The later case of *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. 2d 182, is to the same effect.

We think there is no question of estoppel in this case through the action of the present and the previous Commissioners of Revenues in allowing the one per cent. for evaporation accruing in the shipment of the gasoline into this state. The case of *Southwestern Distilled Products Co.* v. *State, ex rel. Humphrey,* 199 Ark. 761, 136 S. W. 2d 166, appears to be decisive of this question, it being there held (to quote the third headnote in that case) that "The state is not estopped by the unauthorized act of the Revenue Commissioner in promising not to levy or collect the tax." In other words, the Commissioner's erroneous construction of the law does not change the law. That holding was reaffirmed in the case of *Superior Bathhouse Co.* v. *McCarroll, Commissioner,* 200 Ark. 233, 139 S. W. 2d 378.

We are also of the opinion that the state is not barred from the collection of this tax by § 13899, Pope's Digest, the provisions of which are invoked by appellant to defeat the suit. This question was decided adversely to appellant's contention in the case of *Southwestern Distilled Products Co.* v. *State, ex rel. Humphrey, supra.* There a rectifier had paid the taxes which the Commissioner said were due, and the provisions of § 13899, Pope's Digest, were invoked to prevent the collection of any additional tax. This contention was not sus-

tained, and it was held (to quote the fourth headnote in that case) that "Appellee's action to collect the excise tax imposed on intoxicating liquors by § 4 of act 109 of 1935 was not barred by § 13899 of Pope's Digest providing that after the assessment and payment of an excise tax, no action shall be maintained for the re-assessment of the tax except for actual fraud of the taxpayer, since the latter statute has no application where the tax has never been assessed nor paid by the person sued."

We conclude, therefore, that the decree of the court below, from which is this appeal, is correct, and it is, therefore, affirmed.