CITY OF FT. SMITH *v.* TAYLOR.

5-1457                              310 S. W. 2d 13

Opinion delivered February 17, 1958.

Pettus A. Kincannon, Lem C. Bryan and Warner, Warner & Ragon, for appellant.

Gean, Gean & Gean, for appellee.

GEORGE ROSE SMITH, J. This is a dispute over the ownership of a sewer main, a mile or more in length, which lies along Old Greenwood Road in the city of Fort Smith and drains into the city's sewer system. The main was installed by the appellee, who contends that it will remain his private property until he has recouped his construction costs by means of connection charges imposed upon lot owners who utilize the main. The city insists that the sewer became city property upon its completion and that the city alone is entitled to impose connection fees. The circuit court, sitting without a jury, adopted the appellee's theory of the case and entered a judgment declaring the main to be private property until the appellee shall have recovered his costs of construction, which the court fixed at $41,190.

There are at least three ways by which permission may be obtained for the laying of sewer lines within the public streets of Fort Smith. One, involving the formation of an improvement district, does not concern us here. The pivotal question is which of the other two methods should be regarded as controlling with respect to this particular sewer main.

The city argues that the main was constructed under the authority of Ordinance No. 1075, a general law adopted in 1913. This ordinance permits the owners of land not served by the city sewer system to connect their property with that system upon the payment of $150 an acre. The ordinance provides that a permit for the connection must be obtained, that the construction will be supervised by the city engineer, and that upon completion the sewers lying within the streets and alleys will become the property of the city.

Taylor insists that when he constructed this main in 1955 he followed not the general law but a special res-

olution adopted by the city commissioners in 1952. That resolution authorized Taylor to lay a private sewer line along South 31st Street, to serve several named subdivisions "and any other property in said vicinity which can be drained into said sewer line." It is conceded that Taylor built the 31st Street main in 1952 and that it remained his private property until he recovered his outlay by means of connection charges. The court below found that at the time of the trial Taylor had recouped the entire cost of the 31st Street private sewer line and that title to the line should be vested in the city.

The construction of the Old Greenwood Road main, now in dispute, came about in this way: In April of 1955 Claude Meadors owned about thirteen acres, abutting Old Greenwood Road, which he proposed to subdivide as a residential area to be known as Marilyn Heights Addition to the city. A similar area, perhaps half a mile farther down Old Greenwood Road, was owned by the Peoples Company and was also to be subdivided as a residential addition. On April 8, 1955, Meadors and the Peoples Company obtained from the city commissioners, acting under the authority of Ordinance No. 1075, separate permits to connect their proposed additions to the city sewer system, the required fees of $150 an acre being paid. We may remark at this point that the lateral sewer lines subsequently laid in the dedicated streets of these two additions doubtless became, upon completion, the property of the city, in accordance with Ordinance 1075.

The Marilyn Heights acreage lay about half a mile from the end of the South 31st Street sewer, which was then privately owned by Taylor, and the Peoples Company property lay still farther away from a point of access to the city sewer system. To meet this difficulty both Meadors and the Peoples Company executed written contracts with Taylor, who is a plumbing contractor. These contracts recite that Taylor owns a private sewer line (the 31st Street line) which he agrees to extend to the new subdivisions. It is expressly stated that title to the extension will remain in Taylor and

that he will be entitled to connect other property to the line, within the limits of its capacity. Other additions were in fact later connected to the line; by the date of the trial Taylor had recovered about 80 per cent of what the court found to have been his investment.

Before installing the Old Greenwood Road sewer main Taylor filed with the city his plans and specifications, which were approved by the city engineer and the State Board of Health. He did not obtain either a permit under Ordinance 1075 or the passage of a resolution similar to that adopted in 1952. He did, however, discuss the matter with the city commissioner in charge of the sewer department, and the circuit court was justified in finding that both Taylor and this commissioner believed that the proposed construction came within the 1952 resolution's reference to "other property . . . which can be drained into" the South 31st Street line. During the progress of construction the work was inspected by the city engineer.

This litigation arose in 1956, after the city had granted a connection permit to a man named Hinton, who owned property in the undeveloped area between Marilyn Heights Addition and the Peoples Company addition farther down the road. Taylor insisted that he was entitled to receive the connection fee and brought this action to recover from Hinton. By intervention the city asserted its claim of ownership. The circuit court held that, even if the city's contention were technically sound, it was estopped to dispute Taylor's title until he had recovered his investment in the line.

The trial court's conclusion is manifestly just, and we think it to be well founded in law. There can be no doubt that Taylor, as well as everyone else concerned, thought the Greenwood Road line to be an extension of the 31st Street private sewer. When the older line was originally installed Taylor intended to use six-inch pipe, but the city commissioner required him to put in an eight-inch line to allow for future extensions. The 1952 resolution expressly referred to other property that might be drained by the 31st Street private sewer. The

contracts between Taylor and the real estate developers clearly recognize his title to the extended line. The responsible city commissioner shared the general belief in the matter and permitted Taylor to go ahead without any warning that the city meant to take over the line as soon as it was completed.

Despite these facts the city argues that the 1952 resolution was void and therefore cannot serve as a basis for Taylor's assertion of title. It is pointed out that the statute relating to the commission form of city government, which prevails in Fort Smith, provides that no right to occupy the streets shall be granted except by ordinance. Ark. Stats. 1947, § 19-615. Hence, it is said, no such right can be granted by a mere resolution. Furthermore, the city contends that Ordinance 1075 could not be modified by the 1952 resolution, in view of the rule that an ordinance cannot be repealed or amended by a resolution. *Meyer* v. *Seifert,* 216 Ark. 293, 225 S. W. 2d 4.

This reasoning overlooks the essential nature of the commission form of city government. The mayor and the two city commissioners sit together as a legislative body composed of three equal members, with the mayor having no power to veto any measure. Ark. Stats., §§ 19-609 and 19-614. In these circumstances the traditional distinctions between an ordinance and a resolution naturally lose their force, for the difference becomes one of form rather than of substance. As we said in *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707, with respect to the very city that is now before us: "It is claimed, however, that the increase of salary was given these officers by resolution, instead of ordinance. This did not make any difference. The board of commissioners under the act are given the power to exercise all respective functions usually exercised by city councils. According to the allegations of the complaint, the increase in salary was given to these officers by a resolution passed by the board of commissioners, and this was in legal effect an ordinance enacted by them."

Affirmed.