Maxine MILLER *v.* CITY OF LAKE CITY

90-15                                                      789 S.W.2d 440

Supreme Court of Arkansas
Opinion delivered May 14, 1990

*Rees Law Firm,* by: *David Rees* and *Paul J. Teufel,* for appellant.

*Woodruff & Huckaby,* P.A., by: *Arlon L. Woodruff,* for appellee.

ROBERT H. DUDLEY, Justice. The appellant appeals from the Chancellor's refusal to grant an unlimited variance from Lake City's zoning ordinance. We affirm the Chancellor's ruling.

In 1982, Lake City passed a zoning ordinance and, pursuant to that ordinance, appellant's property was zoned R-1. It is undisputed that under the terms of the zoning ordinance appellant's use of her land was restricted to a single family residence with only one main building to be located on the lot. The city ordinance did not provide for a zoning board; instead, it provided that the city council alone could grant a variance in zoning. Appellant had a single family home on her lot and, in 1988, wanted to build an "addition" so that her sister, who is very ill, could live with her. She did not need a variance for a simple "addition."

She did not seek a zoning variance from the city council, and no one from the city council represented to her that she had obtained any type of variance. Her builder went to the city building inspector and said he wanted to build an "addition" to the house. The inspector asked what the distances would be from the structure to the boundaries of the lot. The builder answered by giving the distances, and the building inspector said, "Go ahead." Later the builder took a blueprint of the construction proposal to the inspector, and the inspector initialed it without examining it. The builder then took the initialed blueprint to the city recorder's office and, with it, asked for a building permit. A building permit for an "addition" was issued. The blueprint, in truth, did not reflect an "addition," but, instead, reflected another separate living quarters connected only by a common roof, in other words, a duplex.

The builder started construction. The building inspector, who was also the water superintendent, dug a waterline to the project and, while there, dug the footing for the project. He testified that he had no idea that the project was going to be a duplex. Shortly thereafter, when the framing was up on the separate quarters and the plumbing and electrical work were roughed in, the City realized what was happening. The city attorney immediately wrote appellant a letter stating:

> Some of your neighbors have expressed concerns to the Mayor that your "add-on" you are currently building may in fact turn your house into a duplex. The Mayor has asked that I write and remind you that your house is zoned in R-1 and duplexes are prohibited in a R-1 zoning.

As you know the City of Lake City has strictly enforced our zoning laws in the past and we will continue to do so in the future.

Appellant went ahead and completed her duplex. The City filed an interesting complaint—an understanding complaint—in which it asked that appellant be enjoined from using the property as a multi-family dwelling, or as a rental unit "with a minimum amount of hardship on the defendant." In a ruling accommodating the foregoing language, the Chancellor held that the City was estopped from enforcing the zoning ordinance for so long as appellant's ailing sister lived in the duplex. The City did not appeal the ruling. Appellant does appeal and asks that we make the variance unlimited in time.

Through the years we have held that estoppel can be applied against a city, and we have a fully developed body of case law on the subject. For example, we have said that a city is estopped from asserting an irregularity in a contract of purchase when the city has purchased an item, used it for a considerable period of time, and refused to pay for it. *City of Fort Smith* v. *United States Rubber Co.*, 184 Ark. 588, 42 S.W.2d 1004 (1931). In that case we approved the following language:

> The theory of these cases is that a corporation, such as a county or city, should not be permitted to stultify itself by accepting property for necessary use, use it for years until it is worn out, and then refuse to pay on the ground of a lack of authority to make the contract. A municipal corporation, which has enjoyed the fruits of a contract fairly made, cannot, when called to account, deny the corporate power to make it.

We used similar reasoning in the case of *City of Fort Smith* v. *Taylor*, 228 Ark. 722, 310 S.W.2d 13 (1958). In each of the foregoing cases, the city itself acted either through an ordinance, a resolution, or a contract. There is no such action by the City in the case at bar and, therefore, those cases are not applicable.

There is a second line of cases which deal with acts of city officers. They hold that a city can be estopped to deny the *authorized* acts of its officers, *see Klinger* v. *City of Fayetteville*,

297 Ark. 385, 762 S.W.2d 388 (1988), but that a city cannot be estopped by the *unauthorized* act of its officers. *Green County* v. *County of Paragould*, 166 Ark. 192, 265 S.W. 839 (1924).

█ Unlike the long-time application of the doctrine of estoppel against cities, estoppel has only recently been applied against the State. *Foote's Dixie Dandy, Inc.* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980). In applying the doctrine against the State we have said four requirements, other than authorization, are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct must be acted on or must so act that the party asserting the estoppel has a right to believe the other party so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury. *Padgett* v. *Bank of Eureka Springs*, 279 Ark. 367, 651 S.W.2d 460 (1983); *see also Foote's Dixie Dandy* v. *McHenry, supra*. Those requirements are equally applicable here.

█ The appellant does not meet all of the requirements. First, the building inspector and the permit clerk were not authorized to waive the zoning requirements. Second, they did not know the facts. They thought the appellant was building an addition to her house. They did not know she was building a duplex. Third, they never intended that their conduct would constitute a waiver of the zoning requirements. Thus, estoppel was not properly applicable against the City in this case.

Appellant seeks to take advantage of the Chancellor's kindness and, in effect, argues that, if estoppel applies at all, its application must be unlimited. The argument begs the question. The City did not appeal. The only issue before us is whether the Chancellor erred in ruling that the appellant was not entitled to an unlimited variance. The Chancellor did not err in so ruling.

Affirmed.

TURNER, J., dissents.

OTIS H. TURNER, Justice, dissenting. Maxine Miller, a long-time resident of Lake City, was the owner of a single-family residence located within an area zoned R-1 for single-family residences. Mrs. Miller, a widow, desiring to have her elderly sister near her, decided to construct an addition to her home that

would be connected to the existing structure only at the carport. The new addition was to contain a bedroom, bathroom, living room, pantry, and a kitchen-dining room. She drew a rough sketch of the proposed addition and hired Harvey Stallings, a builder in Jonesboro who had years of experience in the Lake City area, to build the project. Mr. Stallings prepared a drawing from the information furnished by Mrs. Miller, showing the dimensions of the proposed structure, the floor plan, and the relation of the addition to the existing residence.

The builder contacted the city building inspector to acquire a building permit. Thereafter, the building inspector went to the site ostensibly to ascertain the location of the proposed construction and to determine if set-back requirements were being met. Ultimately, the building inspector indicated approval of the completed construction plan by initialing the plan. He then executed a building permit which contained no exceptions or restrictions. The city clerk was paid the appropriate fee and final approval of the permit was secured.

When the construction was commenced, the building inspector, using city equipment, came to the job site and dug the footings for the foundation. Apparently, this is a service customarily performed by city employees for a fee which is paid to the city.

When the addition was about 70 percent complete, the Mayor of Lake City wrote Mrs. Miller informing her that the construction appeared to be a duplex in a single-family residential zone, and as such, was not permitted under the city zoning ordinance. Eventually, the city sought a permanent restraining order "which will enjoin the defendant from violating the zoning ordinance regulations . . . in such a matter [sic] which will enforce the zoning regulations with a minimum amount of hardship on the defendant." Mrs. Miller answered, contending that the city, by their action in issuing a building permit under these circumstances, was estopped from now enforcing the zoning law as it applied to this construction. After a proper hearing, the court entered its order denying the injunction "to the extent this property may be used by Jim Tom Stotts, as a residence as long as she desires to live there, but thereafter the property may not be used in any fashion which violates the R-1 zoning regulations of the city of Lake City provided they are still in force and effect at

that time." Thus, the court granted a limited or temporary variance based on estoppel, and the appellee does not contest that finding on appeal. However, the appellant appealed from that order to the extent that it limits the use of the property to the duration of the residence of Jim Tom Stotts, the appellant's sister.

In holding that the city was estopped in this instance from enforcing the zoning provision, the trial court obviously found the evidence sufficient to meet the general requirements for establishing estoppel as a defense, and there is no cross-appeal from that finding. Therefore, if estoppel is *available* in Arkansas as a defense to governmental action under these facts and our prior decisions, then the appellant is entitled to a variance from the zoning regulations without the restrictions imposed by the court.

Even though there is no appeal from the trial court's order applying the equitable doctrine of estoppel to governmental action, because the appellant seeks to expand the trial court's order from a limited variance to a permanent variance, solely on estoppel grounds, we have chosen to examine the applicability of that doctrine to governmental action and, specifically, to the facts of this case.

For many years we followed the principle of law that estoppel would never be available as a defense to governmental action. *Belvedere Sand & Gravel Co.* v. *Heath*, 259 Ark. 767, 536 S.W.2d 312 (1976); *Ark. State Highway Comm'n* v. *Lasley*, 239 Ark. 538, 390 S.W.2d 443 (1965); *Ark. State Highway Comm'n* v. *McNeil*, 222 Ark. 643, 262 S.W.2d 129 (1953); *Terminal Oil Co.* v. *McCarroll*, 201 Ark. 830, 147 S.W.2d 352 (1941).

Although not characterized as "estoppel" the first relaxation of the harshness of this doctrine by this court was expressed in the case of *Hammers* v. *State*, 261 Ark. 585, 550 S.W.2d 432 (1977). In that criminal case, the appellant made an oral statement to the prosecuting attorney which implicated the appellant. In exchange for that statement, the prosecutor made a promise to the appellant that he would nolle prosequi the charge against her. The trial court refused her plea for immunity and we, in remanding, decided that she was entitled to a determination of whether or not the agreement, although unauthorized by the trial court, should be enforced on "equitable principles."

Subsequently, in *Foote's Dixie Dandy* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980), we did specifically hold that *estoppel* is a defense which, in the proper case and under very limited circumstances, is available against governmental action. In *Foote's*, we declined to overrule the earlier decisions denying the applicability of estoppel to governmental action but instead, provided a small crevice through which the proper facts might pass to create estoppel as a defense to governmental action.

As some justification for the granting of limited availability to the doctrine, we cited *Gestuvo* v. *District Dir. of the U.S. Immigration & Nat. Serv.*, 337 F. Supp. 1093 (C.D. Cal. 1971), and quoted, with approval:

> [T]he requirements of morals and justice demand that our administrative agencies be accountable for their mistakes. Detrimental reliance on their misrepresentations or mere unconscientiousness should create an estoppel, at least in cases where no serious damage to national policy would result . . . the contrary conclusion [would] sacrifice 'to form too much of the American spirit of fair play in both our judicial and administrative process.'

I am convinced that the facts of the present appeal fall within the exception which we recognized in the *Foote's* case.

If the ordinance provision was one which could not be waived or varied except by passage of amendatory legislation, or one which permitted *no* exercise of discretion by the city, then estoppel would not be appropriate, but the relief sought by the appellant from Lake City — a variance from the requirements of the ordinance — is a relief which is within the power of the city to grant in the first instance. Under the facts of this case, the appellant, with the consent of the agents of the city, has built a structure that by its very nature is a non-conforming use. Not only was the structure built with the *consent* of the city's agents charged with knowledge of and responsibility over this governmental function, but also the construction required their affirmative acts before proceeding.

In order to apply estoppel, four elements are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct must be acted on or must so act that the party

asserting the estoppel has a right to believe the other party so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury. *Padgett* v. *Bank of Eureka Springs*, 279 Ark. 367, 651 S.W.2d 460 (1983); *see also Foote's Dixie Dandy* v. *McHenry, supra.* There being no appeal from the trial court's finding of estoppel, we consider the above requirements to be established from the facts.

Without expanding the law enunciated in *Foote's Dixie Dandy* v. *McHenry*, I would hold that the actions of the agents of Lake City and the appellant's reliance thereon, bring this case within the limited exception first stated in *Foote's* and would affirm the trial court's finding that Lake City is estopped to deny the appellant's right to the use of the involved property as a multi-family dwelling and reverse that part of the order which limits the variance to the period of occupancy by Jim Tom Stotts.

I respectfully dissent.