ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.*
ESTATE OF Ruby LEWIS, Deceased

96-131                                                    922 S.W.2d 712

Supreme Court of Arkansas
Opinion delivered June 3, 1996

*C. Norton Bray*, for appellant.

*Paul C. Crumpler*, for appellee.

ROBERT L. BROWN, Justice. This case involves the issue of whether the probate court erred in ruling that the appellant, Arkansas Department of Human Services (DHS), was estopped from recouping Medicaid benefits paid to Ruby Lewis from her Estate. We agree with DHS that the probate court did err in this regard, and we reverse and remand.

Ruby L. Lewis died intestate on December 14, 1994, at the age of 73. She was survived by two daughters and two granddaughters, and her estate at the time of her death was valued at approximately $25,000. A petition to open her estate was filed on Decem-

ber 20, 1994. On February 10, 1995, DHS filed a claim against the Estate for Medicaid benefits paid on Ruby Lewis's behalf for medication and home health care during her lifetime pursuant to Act 415 of 1993, now codified at Ark. Code Ann. § 20-76-436 (Supp. 1995). Act 415 provides in part that DHS may make a claim against the estate of a deceased recipient of Medicaid benefits for the amount of the benefits paid. The amount claimed by DHS was $9,977.36. The claim was denied by the administratrix of the Estate.

On March 20, 1995, DHS filed an amended claim against the estate for $9,488.01. The amended claim subtracted those charges paid prior to August 13, 1993, which DHS believed to be the effective date of Act 415. The actual effective date of Act 415 of 1993 was August 15, 1993. This claim was also denied by the administratrix.

On May 17, 1995, and August 23, 1995, hearings were held before the probate court on the various claims by DHS. At the first hearing, William Freevern, a program administrator in the medical assistance unit of DHS, testified as to the Medicaid payments made on behalf of Ruby Lewis for medication and home health care since August 15, 1993. Neva Braswell, one of the daughters of the decedent and the administratrix of her estate, also testified that her mother applied for services provided by the Elder Choice Program in 1992. She added that her mother was never informed that DHS would be able to recoup the Medicaid benefits after her death.

On August 23, 1995, the second hearing was held before the probate court to allow further testimony by the Estate. At that hearing, DHS stipulated that Ruby Lewis never received any notice or information from DHS about its ability to recover Medicaid payments from her Estate. This point was corroborated by the testimony of other DHS employees, one of whom added that she was never told by DHS to advise recipients of the change worked in the law by Act 415. Neva Braswell expanded her testimony to say that after her mother was denied Medicaid eligibility in 1992, she hired an attorney and appealed. She was eventually granted eligibility in June of 1993. Braswell testified that her mother had personal insurance that would have paid over 80 percent of her medication bills. She added that Medicaid paid approximately $1,800 for her medication, which it is now seeking to recoup.

On September 26, 1995, the probate court issued a letter opinion which stated in part:

> Ruby Lewis as a part of her agreement with DHS was required to inform DHS of any change in her financial circumstance which could then disqualify her from receiving the medicaid benefits. It seems reasonable that the same responsibility could be expected of DHS to inform Ruby Lewis of any changed circumstances which would affect her. The Supreme Court of Arkansas in the *Wood* case, *supra,* [*Estate of Wood* v. *Department of Human Services,* 319 Ark. 697, 894 S.W.2d 573 (1995)], described the result of Act 415 of 1993 as changing the benefit received from an entitlement or gift to a loan. Surely this important change in the status of the relationship between benefit recipient and provider of the benefit is of such significance that DHS should have concluded that its medicaid recipients should be advised of this change. Such was not done and in fact local DHS employees testified that they were not even aware of the change brought about by Act 415 so that they could in turn advise their clients.
>
> It is the conclusion of this Court that DHS had an obligation to advise its benefit recipients such as Ruby Lewis of the change in nature of the benefits which would occur as a result of Act 415 of 1993. Failing to do so DHS should be and in this case is estopped from then making a claim against this decedent's estate for such benefits.
>
> The equitable doctrine of estoppel is an affirmative defense and as such should be pled. This is to allow the opposing party to present evidence in opposition. In this case it is hard to imagine evidence DHS might offer since the facts are not in dispute. The pleadings here are deemed amended to conform to the evidence.

A formal order by the probate court was entered on October 3, 1995.

██ DHS's sole point on appeal is that the probate court erred in finding that DHS was estopped from asserting its claim against the Estate. There are four elements necessary for a finding of estoppel: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that the conduct be acted on or

must act so that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) the party asserting the estoppel must rely on the other's conduct and be injured by that reliance. *Miller* v. *City of Lake City*, 302 Ark. 267, 789 S.W.2d 440 (1990); *Foote's Dixie Dandy* v. *McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980). In *Foote's Dixie Dandy* v. *McHenry, supra*, this court abandoned the principle that the State can never be estopped by the actions of its agents. We stated in *Foote's Dixie Dandy*, however, that "[e]stoppel is not a defense that should be readily available against the state, but neither is it a defense that should never be available." 270 Ark. at 822, 607 S.W.2d at 325.

Since *Foote's Dixie Dandy* v. *McHenry, supra*, this court and the Arkansas Court of Appeals have only applied the doctrine of estoppel against the State where an affirmative misrepresentation by an agent or agency of the State has transpired. *See, e.g., Foote's Dixie Dandy* v. *McHenry, supra* (state auditor's misrepresentation that further documentation need not be filed may estop the State from collecting unemployment insurance contributions); *Wells* v. *Everett*, 5 Ark. App. 303, 635 S.W.2d 294 (1982) (Employment Security Agency informed recipient that amount disbursed was correct amount and was estopped from collecting the overpayment); *Fountain* v. *Everett*, 3 Ark. App. 214, 623 S.W.2d 861 (1981) (misinformation supplied by an Employment Security Agency of a sister state may estop Arkansas's agency from denying benefits); *Rainbolt* v. *Everett*, 3 Ark. App. 48, 621 S.W.2d 877 (1981) (Employment Security Agency informed applicant that she need not seek employment until after she viewed a training film and was estopped from using the delay to deny benefits).

Indeed, in *Everett* v. *Jones*, 277 Ark. 162, 639 S.W.2d 739 (1982), this court held that estoppel should not be applied where there was no clear proof of an affirmative misrepresentation by the agency. In *Jones*, the only evidence that was presented was that the State agency had failed to advise the claimant of the procedure to be followed. This court stated:

> Certainly, we do not intend that the *Foote's* doctrine be extended to a nebulous and indefinite situation where the agent of the State has not clearly caused the claimant to believe that nothing more is necessary other than to return on the assigned date .... Before the State is estopped from

> applying this law there must be substantial evidence that the citizen relied upon *actions or statements* by an agent of the State.

*Jones*, 277 Ark. at 167, 639 S.W.2d at 742. (Emphasis added.) The specific reference to *actions or statements* by a State agent underscores the need for some affirmative act as a prerequisite to a judicial finding of estoppel. *See also AP&L v. Arkansas Pub. Serv. Comm'n*, 275 Ark. 164, 169, 628 S.W.2d 555, 559 (1982), where this court referred to the "necessary reliance upon misleading action by the Commission" for estoppel to pertain.

In the case at hand, there was no affirmative misrepresentation by the State but only silence on the part of DHS of its right to recoup Medicaid benefits after Ruby Lewis's death. It necessarily follows that under these conditions, there can be no evidence that Ruby Lewis in any way relied on the State's silence regarding Act 415 to her detriment. For us to conclude otherwise would be to engage in guesswork and rank speculation which we will not do.

We take particular note of the fact that Act 415 does not impose a duty on DHS to inform Medicaid recipients of its right to file claims against their estates for benefits paid; nor do the federal Medicaid statutes or regulations. *See, e.g.,* 42 U.S.C. § 1396 p(b) and 42 C.F.R. § 433.36. In fact, the Federal Regulations only provide that notice to a recipient be given if the agency is placing a lien on the property of that recipient while he or she is in a nursing facility and not reasonably expected to be discharged. 42 C.F.R. § 433.36(d).

In sum, we decline to expand the *Foote's Dixie Dandy* doctrine to encompass incidents devoid of affirmative misrepresentation by the State. We further decline to impose a duty on State agencies to inform recipients of state benefits of changes in state programs, such as occurred in Act 415, absent a clear directive by the General Assembly to do so. This case, accordingly, is reversed and remanded for a determination of the precise amount of DHS's claim.

Reversed and remanded.

DUDLEY, J., not participating.