The Honorable Jimmy "Red" Milligan State Representative P.O. Box 68 Yellville, Arkansas 72687-0068
Dear Representative Milligan:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 The City of Bull Shoals (population 2,000) built a sewer system in 1980 to accommodate the residents of the city. The area is somewhat hilly. Therefore, the collecting mains in some instances are at elevations above the homes that they serve. In these cases, lift pumps (called grinder pumps) were installed to pump sewage uphill to the sewer mains.
 When the sewer system was initially constructed, approximately ten (10) homes were equipped with grinder pumps without cost to the owners.
 Currently, there are seventeen (17) homes with grinder pumps. In a few cases, the cost for the pumps was paid for by the city, but approximately four (4) or five (5) of the grinder pumps were purchased by the property owners.
 The city ordinance requires homes to be serviced by the public sewer system if the property line of the home is within 300 linear feet of a collecting main of the city system.
 A diligent search of all documents related to the installation of the sewer system has been made but no reference to the grinder pumps has been found.
 Attached hereto is a copy of Sewer Use Ordinance No. 104 adopted November 12, 1980. Ordinance No 104 has not been repealed and is still in effect. There are several sections that may be relevant to the problem of grinder pumps. You attention is invited to Section 4 of Article II which provides in part as follows: "The owner of all houses . . . is required at his expense to install suitable toilet facilities therein, and to connect such facilities directly with the proper public sewer . . ."
 Also, Section Three (3) of Article IV provides in part as follows: "All costs and expenses incident to the installation and connection of the building sewer shall be borne by the owner . . ."
 Section Seven (7) provides as follows: "Where preliminary or flow equalization facilities are provided for any water or waste, they shall be maintained continuously in satisfactory and effective operation by the owner at his expense."
 A problem has arisen with regard to the cost for installation and/or the maintenance of grinder pumps.
 The cost for a grinder pump varies from approximately $1,500.00 to $3,000.00 each depending upon the size of the pump required.
 When the sewer system was initially built, one of the inspectors told a few property owners that the city would maintain the pumps. The inspector was not authorized by city ordinance or resolution to make any such declarations.
 At different times, various city employees have made statements to the effect that the city will maintain the grinder pumps. These representations have been made by a street superintendent and an operator of the sewer treatment plant. None of the employees have been authorized by ordinance or resolution to make such representations.
 After the construction of the public sewer system, the city has maintained the grinder pumps for approximately twenty-two (22) years. And, in one or two instances, the city has paid for new grinder pumps. This was done with the knowledge and consent of former mayors of the city in spite of the provisions of Ordinance No. 104.
 Additionally, with the exception of one case, the city does not have an easement where the grinder pumps are located. Moreover, the city does not have licensed employees qualified to make electrical or plumbing repairs to the grinder pumps.
These circumstances have prompted you to pose a question I will paraphrase as follows:
 In light of the provisions of Bull Shoals City Ordinance No. 104, is the city obligated to bear the expense of maintenance and/or replacement and/or installation of sewer grinder pumps?
RESPONSE
You indicate that city officials have in the past made representations and performed services relating to grinder pumps in contravention of Bull Shoals Ordinance No. 104 (the "Ordinance"). The law provides that a city cannot be estopped by the unauthorized representations of its agents from asserting what might otherwise be its rights. Given that the law does not obligate a city to install and to maintain grinder pumps needed to tie homes into sewer mains, I do not believe a city can be charged with this obligation, regardless of whether city officials have made unauthorized pledges to do so.
Sections 14-235-302 and -304 of the Code (Repl. 1998) empower cities, when in the opinion of the board of health the public health will be promoted thereby, to require any property owner to connect with municipal sewer lines at the owner's expense so long as the property to be served lies within 300 feet of the sewer line. Article II, § 4 of Bull Shoals City Ordinance No. 104 (the "Ordinance") purports to require all city residents to hook into the sewer system if their property lies within the prescribed 300-foot distance from a sewer line. Article IV, § 3 of the Ordinance further provides:
All costs and expense incident to the installation and connection of the building sewer shall be borne by the owner. The owner shall indemnify the City for any loss or damage that may directly or indirectly be occasioned by the installation of the building sewer.
I am enclosing for your information a copy of Ark. Op. Att'y Gen. No.2003-147, in which I opined that a city could obligate citizens whose property abuts a sewer line to tie into the line only if a public health authority determines that doing so would promote the public health. Applying the reasoning set forth in my previous opinion, I question whether the Bull Shoals city council was authorized to enact an ordinance that would require all citizens, without inquiry into the impact on public health, to tie into the city's sewer system if their property lies within 300 feet of a sewer line. Having offered this opinion, I will note that an occupied home located below a sewer that either lacks or has a malfunctioning grinder pump would certainly appear to pose a health risk of the sort that would trigger a city's authority to direct that the pump be fixed at the owner's expense.
Your question suggests a further concern that the acts of various city officials in the past in approving installation or repair by the city of privately owned grinder pumps might obligate the city to install and maintain grinder pumps as needed in other homes. Specifically, you report that an inspector, a street superintendent and an operator of the sewer treatment plant have represented without authorization that the city would maintain grinder pumps. You further report that the city has maintained the grinder pumps for 22 years and has paid for new grinder pumps in several instances. As you have represented the facts, none of these actions was authorized by ordinance or resolution; on the contrary, they were expressly prohibited by the Ordinance.
At issue is whether the city at this point might be estopped by the past conduct of its officials from refusing to install and maintain grinder pumps.[1] As noted in Crittenden Hosp. Ass'n. v. Board of Equalization,330 Ark. 767, 774, 958 S.W.2d 512 (1997):
 This court has held that a government entity can be estopped to deny the authorized acts of its officers, but it cannot be estopped by the unauthorized acts of its officers. See Miller v. City of Lake City, 302 Ark. 267, 789 S.W.2d 440 (1990); Klinger v. City of Fayetteville, 297 Ark. 385, 762 S.W.2d 338 (1988); Greene County v. Paragould, 166 Ark. 192, 265 S.W.2d 839 (1924).
But see Chadwell v. Pannell, 27 Ark. App. 59, 65, 766 S.W.2d 38 (1989) (holding that an agent acting within the scope of his apparent authority on behalf of a city might bind the city as his principal).[2]
Somewhat complicating the analysis of this issue is the following fromDuhac v. City of Hot Springs, 67 Ark. App. 98, 106, 992 S.W.2d 174
(1999):
 The Arkansas Supreme Court has held that estoppel may only be applied against the State when there has been an "affirmative misrepresentation by an agent or agency of the State." Arkansas Dep't of Human Servs. v. Estate of Lewis, 325 Ark. 20, 922 S.W.2d 712 (1996). See also Foote's Dixie Dandy, Inc. v. McHenry, supra. Estoppel should not be applied where there was no clear proof of an affirmative misrepresentation. Everett, Director v. Jones, 277 Ark. 162, 639 S.W.2d 739 (1982). These requirements are equally applicable to municipal corporations. Miller v. City of Lake City, 302 Ark. 267, 789 S.W.2d 440 (1990).
It is not entirely clear how this "affirmative misrepresentation" standard relates to the "authorized/unauthorized" standard recited above. However, I believe the court provided some guidance on this question in Arkansas State Highway Commission v. Townsend, 313 Ark. 702,706, 858 S.W.2d 66 (1993), which addressed whether the state might be estopped from enforcing statutory directives based upon misstatements of law by Commission employees regarding encroachments on public rights-of-way:
 [A]s already discussed, 27-67-304(a) specifically prohibited such encroachments. In the face of this express proscription by the General Assembly, the Commission employees had no authority to engage in conduct to countermand a statutory directive and commit the state to encroachments in the right-of-way. Unauthorized acts by state employees under such circumstances will not result in estoppel against the state. We have specifically held that a sovereign is not bound by the unauthorized acts of its employees. Miller v. City of Lake City, 302 Ark. 267, 789 S.W.2d 440 (1990); Hankins v. City of Pine Bluff, 217 Ark. 226, 229 S.W.2d 231 (1950).
Implicit in this passage is a recognition that an "affirmative misstatement" made by a state or city employee in and of itself will not support an estoppel. In terms of the language from Duhac quoted above, an "affirmative misstatement" may apparently serve as a basis for estoppel only if it is made within the scope of duties assigned "an agent or agency of the State" — i.e., when the speaker is authorized to pronounce on the subject. See also Arkansas Alcoholic Beverage Control Division v.Person, 309 Ark. 588, 591-92, 832 S.W.2d 239 (1992) (when the local ABC agent lacked authority to waive regulations regarding location of retail outlets, estoppel could not be applied against the state).
The court's ruling in Townsend would appear to be directly applicable to the situation you describe in your request. In both cases, legislation in the form of a statute and/or ordinance directed one course of conduct and a government agent advised that another course of conduct would apply. The court's ruling in Townsend suggests that the agent's pronouncement under such circumstances must be deemed unauthorized, thus barring any estoppel. I do not believe any city officials, including the city council itself, were authorized to pledge public funds to the maintenance of private sewage connections. Accordingly, I do not believe the past conduct of city officials could impose on the city any responsibility to install or maintain grinder pumps.
Moreover, even if the defense of estoppel were available to potentially restrict what might otherwise be the city's rights, it seems unlikely that an aggrieved property owner could establish injurious reliance, which is a necessary element of estoppel. See note 1, supra. Logic suggests that if a citizen through a misapplication of public funds has received a free grinder pump and/or ongoing grinder-pump maintenance, he cannot rightly describe himself as "injured" when the misapplication ceases. However, I am not prepared to formally opine to this effect, since the question of injurious reliance is necessarily factual. As an executive, not a judicial, officer, I am neither equipped nor authorized to act as a finder of fact.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
Enclosure
[1] In Wingfield v. Contech Construction Products, CA 03-154 (Ark.App. 8-27-2003), the court offered the following definition of "estoppel":
 Four elements are necessary to establish estoppel: "(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct be acted on or must act so that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) the party asserting the estoppel must rely on the other's conduct and be injured by that reliance." Sanifer v. Arkansas Pulpwood Co., Inc., 66 Ark. App. 145, 151, 991 S.W.2d 130, 134 (1999).
[2] In Foundation Telecommunications v. Moe Studio, 341 Ark. 231, 239,16 S.W.3d 531 (2000), the court offered the following definition of "apparent authority":
 Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume, or that he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority that he has; or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. General Motors Acc. Corp. v. Salter, 172 Ark. 691, 290 S.W. 584 (1927). The principal is bound by all the acts of his agent coming within the apparent scope of the authority conferred upon him. Crossett Lumber Co. v. Fowler, 137 Ark. 418, 208 S.W. 786 (1919). Every delegation of authority, whether it be general or special, express or implied, unless its extent be otherwise expressly limited by the same instrument conferring it, carries with it as an incident, the power to do all those things that are necessary, proper, usual, and reasonable to be done in order to effectuate the purpose for which it was created. Brown v. Brown, 96 Ark. 456, 132 S.W. 220 (1910). When the evidence as to the nature and extent of an agent's authority is in conflict, it is a question of fact for the fact-finder. Southland Mobile Home Corp. v. Chyrchel, 255 Ark. 366, 500 S.W.2d 778 (1973). An agency can be established by circumstances, and any evidence tending to establish agency is admissible. Id.
Given this definition, it appears possible that the agent of a city could act without actual authority and still bind the city because he had apparent authority.