# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2632

_____

Calvin Chism,

        Plaintiff – Appellant,

v.

Dan Curtner, Individually, and in his
official capacity as a Fire Chief for the
City of Forrest City, Arkansas,

        Defendant – Appellee.

\* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Eastern
District of Arkansas.

_____

Submitted: March 12, 2010
Filed: August 31, 2010

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Calvin Chism appeals the district court's[1] adverse grant of summary judgment on his civil rights claims related to his termination from employment as a firefighter for the city of Forrest City, Arkansas. Chism asks this court to reverse the grant of summary judgment on all claims and to remand for further proceedings. We affirm.

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

# I

Calvin Chism, an African-American, was employed for sixteen years as a firefighter in Forrest City, Arkansas ("the City"). Chism had been arrested several times for various charges during his tenure with the department, including arrests for third degree battery in 1992, for assault in 1994, for aggravated assault in 2003, for two counts of third-degree battery in 2005, for two counts of domestic battery in 2005, and for harassing communications in 2005. He was placed on six months' probation by Fire Department Chief Dan Curtner after the 2005 incidents.

In February 2006, Chism told his supervisors, Chief Curtner and Captain Johnny Ruffin, that he had been questioned by the Federal Bureau of Investigation (FBI) in connection with receipt of allegedly stolen merchandise. Curtner informed Chism, "When they come arrest your ass, I'm going to fire your ass," to which Chism responded "Yes, sir." Chism was subsequently arrested on federal felony charges of receiving stolen merchandise and Curtner sent him a letter terminating his employment shortly thereafter.

After learning of his termination, Chism spoke with Larry Bryant, the then-mayor of Forrest City, during which conversation Bryant assured Chism he would be given his job back if the charges were dismissed.[2] In December 2006, after Bryant lost his re-election bid, the charges against Chism were dismissed, but he was not ultimately reinstated with the fire department thereafter.

---

[2]In his brief, Curtner contests Chism's claim that Bryant promised Chism he would be reinstated if the charges were dismissed. Instead, Curtner notes a witness to the conversation testified Bryant said to Chism, "if you ain't done nothing, you ain't got nothing to worry about." Viewing the evidence in the light most favorable to Chism, as we are required to do when reviewing summary judgment orders, we accept as true Chism's allegation regarding Bryant's promise for purposes of our discussion below.

Chism did not file a complaint with the Equal Employment Opportunity Commission (EEOC). He filed suit in the district court seeking relief under 42 U.S.C. §§ 1981 and 1983, wherein he alleged he was wrongfully terminated based on his race and Curtner had violated his rights to due process and equal protection. Chism also brought a claim for promissory estoppel under Arkansas state law. Curtner subsequently moved for summary judgment, which the district court granted. Chism timely appeals.

## II

We review a district court's decision to grant summary judgment de novo. Davis v. Oregon County, Mo., 607 F.3d 543, 548 (8th Cir. 2010). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the evidence, and make all reasonable inferences from the evidence, in favor of the nonmoving party. Sitzes v. City of West Memphis Ark., 606 F.3d 461, 465 (8th Cir. 2010). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Dixon v. Pulaski County Special Sch. Dist., 578 F.3d 862, 867 (8th Cir. 2009).

A. Race Discrimination Claims

Section 1981 provides persons with the equal right to make and enforce contracts. Harris v. Hays, 452 F.3d 714, 717 (8th Cir. 2006). A claim against a state actor under § 1981 must be asserted through § 1983. Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1181 (8th Cir. 1998). While municipalities may also be sued as "persons" under § 1983, they may not be held liable pursuant to a theory of respondeat superior. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994). Instead, municipal liability arises only if there is an official

municipality policy or custom underlying the injury. Miller v. Compton, 122 F.3d 1094, 1099 (8th Cir. 1997). A single act of a policy maker may suffice to establish such a policy, but "that act must come from one in an authoritative policy making position and represent the official policy of the municipality." Id. at 1100.

The district court agreed with the defendants that Chism had not identified a policy or custom of the city which resulted in his firing. On appeal, Chism claims there was no need to identify a particular policy or custom, as the district court held, because the Mayor's promise of reinstatement to Chism was an expression of policy giving rise to liability. In support of his argument, Chism notes that, under Arkansas law, a mayor is provided with the power to appoint and remove all department heads and manage the affairs of the city. See Ark. Code Ann. § 14-42-110. Chism also challenges the district court's alternative ruling that, even if Chism had identified a policy or custom, his claim would still fail because he cannot show any discriminatory intent on the part of the defendants.

In analyzing a § 1981 claim for employment discrimination on the basis of race, in the absence of direct evidence of discrimination, we employ the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] Under McDonnell Douglas, Chism first must establish a prima facie case of discrimination by showing: (1) that he is a member of a protected class; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 520 (8th Cir. 2010). Once Chism satisfies his prima facie case, the burden shifts to Curtner to come forward with a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action. Id. at 521. Finally, if Curtner is able to provide such a reason,

_____

[3]We analyze Title VII, § 1981, and § 1983 claims under the same framework. Humphries v. Pulaski County Special Sch. Dist., 580 F.3d 688, 692 n.3 (8th Cir. 2009).

the burden shifts back to Chism to demonstrate that Curtner's proffered explanation is mere pretext for discrimination.  Id.

Under the first step, the district court found Chism was a member of a protected class and suffered an adverse employment action.  The court also found Chism was meeting the expectations of his job, viewing the evidence in the light most favorable to Chism.  However, the court determined Chism could not establish that similarly situated employees outside the protected class were treated differently.  Chism claims a white firefighter was previously arrested for DWI, but was allowed to keep his job with the department.  Chism also testified a white police officer was involved in an accident while driving under the influence and he was not terminated.  The court concluded these incidents involved individuals who were not similarly situated to Chism, and therefore he could not meet his prima facie case of discrimination.

We agree with the district court.  The test to determine whether individuals are similarly situated "is rigorous and requires that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself to the other employees."  Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008).  When different decision-makers are involved in terminating employees, the employees are rarely similarly situated in all relevant respects.  Id.  In this case, the white firefighter described by Chism was arrested sometime between 1998 and 2000, before Curtner became chief.  Similarly, the white police officer was a member of a different city department, with a different decision-maker in place.  As a result, no one who was involved in the decision to fire Chism was involved in any of the decisions with regard to those employees.  Moreover, Chism could not point to another employee who had any problems with the law in his department during his tenure or Curtner's tenure.

Even if Chism had made out a prima facie case of discrimination, once Curtner and the City set forth a legitimate nondiscriminatory reason for firing him, he would

-5-

still have to be able to show the legitimate reason was a pretext for discrimination. E.E.O.C v. Trans States Airlines, Inc., 462 F.3d 987, 992 (8th Cir. 2006). Curtner and the City allege Chism was terminated because of his multiple run-ins with the law. Chism was arrested six times during his tenure with the department before he was arrested for a federal felony and fired. He was just getting off of probation when he was arrested again. Chism admits Curtner informed him he would be fired if he was arrested again when he discussed his interrogation by FBI officers.

In response, Chism argues the reason for the termination was pretext because his termination violated the City's Guidelines for Appropriate Conduct, which explicitly denominate "repeated conviction of legal violation" and "conviction of a felony" as inappropriate conduct. Chism contends the policy does not list being charged with a crime as a reason for termination, and thus the deviation from this policy constitutes pretext. See, e.g. Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC, 471 F.3d 843, 847 (8th Cir. 2006) (noting a plaintiff may show pretext by demonstrating that an employer failed to follow its own policies).

We agree with the district court, however, that this list specifically notes it is non-exhaustive and it includes a general requirement for good conduct, on and off the job. Given the number of arrests and other infractions on Chism's record and the lack of evidence showing discrimination of any sort, Chism cannot show the City and Curtner's nondiscriminatory reason for his termination was pretextual and that racial animus was the motivating factor for his termination. See Anderson, 606 F.3d at 522 ("[F]ederal courts do not serve as 'super-personnel departments,' sitting in judgment of an employer's business decisions absent evidence of discrimination."). As a result, the district court properly granted summary judgment on Chism's race discrimination claims.

B.  Due Process and Equal Protection Claims

Chism next argues the defendants failed to afford him his constitutional rights of due process and equal protection.  "To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest."  Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1114 (8th Cir. 2009).  A substantive due process claim, which is reserved for "truly egregious and extraordinary cases," requires Chism to show the defendants deprived him of a right he maintained under the Fourteenth Amendment in a way that shocks the conscience.  Mills v. City of Grand Forks, _ F.3d _, 2010 WL 2899152, at *2 (8th Cir. July 27, 2010).  The Equal Protection Clause, on the other hand, generally requires that similarly situated people be treated alike.  Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000).

Chism's argument on both of these issues on appeal is that the Mayor's promise of reinstatement caused Chism to give up his right to file an EEOC claim and to bring a lawsuit pursuant to Title VII, because he relied on that promise.  Chism separates this argument from his state law promissory estoppel claim, and he argues that persuading him to give up his rights under Title VII constituted an unconstitutional deprivation of rights.

We agree with the district court that Chism's due process and equal protection claims fail.  First, regarding his procedural due process claim, Chism was informed by Curtner that he would be terminated if he was arrested again.  The Mayor's promise was insufficient to create a property interest in his position because he had no reasonable and legitimate expectation of employment in light of Arkansas law and the terms of his employment, which was at-will.  See Kozisek v. County of Seward, Neb., 539 F.3d 930, 937 (8th Cir. 2008) ("Whether [the plaintiff] had a constitutionally protected property interest in his job is dependent upon [state] law and the terms of his employment").  Likewise, Chism's contentions with regard to his

-7-

termination do not rise to the level of a substantive due process violation because he cannot show Curtner and the City acted "arbitrarily and capriciously, or in a way that shocks the conscience." Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 736 (8th Cir. 2009). Finally, Chism's equal protection claim fails because he cannot establish he was treated differently than any similarly situated individuals. Mills, 2010 WL 2899152, at *4 ("As a threshold matter, [the plaintiff] must demonstrate that the City treated him differently than similarly situated citizens"). As discussed above, Chism was arrested six times, and was terminated only after he was indicted in federal court on a felony. He cannot identify any other firefighters who are similarly situated, and therefore the district court properly granted summary judgment on Chism's equal protection claim.

## C. Promissory Estoppel Claim

Finally, Chism argues the defendants should be estopped from denying him further employment based on then-mayor Bryant's promise to reinstate him if the charges were dismissed. Arkansas adheres to the black-letter law on promissory estoppel, found in the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise. The remedy granted for breach may be limited as justice requires.

K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 280 S.W.3d 1, 14 (Ark. 2008). Under Arkansas law, "a city can be estopped to deny the *authorized* acts of its officers, but . . . a city cannot be estopped by the *unauthorized* act of its officers." Miller v. City of Lake City, 789 S.W.2d 440, 442 (Ark. 1990) (internal citation omitted).

The district court concluded that, because Arkansas is an at-will state and Chism never had a contract of employment, nor did the Mayor have authority to create a contract of employment, Chism's promissory estoppel claim failed. We agree. Chism has not shown the Mayor's promise was an authorized act, nor that it could create an employment contract in an at-will state. It does not appear the Mayor had authority to bind the City to such a promise. Moreover, it is telling that Chism never filed a complaint with the EEOC even after discovering he would not be reinstated, which calls into question whether he acted in reasonable reliance on the Mayor's promise. Ultimately, as discussed above, Chism cannot establish a prima facie case of discrimination, and therefore the defendants are not required to reinstate him based on the repeated offenses he was charged with that justified the termination. As a result, the district court properly granted summary judgment on Chism's promissory estoppel claim.

## III

For the foregoing reasons, we affirm the district court's grant of summary judgment on Chism's claims.

_____